## JONES v. STATE.

(No. 935; Decided Sept. 29, 1919; 183 Pac. 745.)

CRIMINAL LAW—LARCENY—INSUFFICIENT EVIDENCE TO SUSTAIN CON-
VICTION—NEWLY DISCOVERED EVIDENCE—DILIGENCE.

1. Where the only evidence in a prosecution for larceny on
   which the jury could rightfully find the defendant guilty,
   was the testimony of a witness who had himself been con-
   victed of the larceny of a horse upon a plea of guilty, and
   was under sentence at the time, whose story was improba-
   ble and contradicted by several witnesses on material mat-
   ters, held, insufficient to sustain a conviction.
2. In a prosecution for larceny, the testimony of one who had
   purchased the stolen horse, to the effect that he had
   bought it from the prosecuting witness, and not from the
   defendant, was material, but not sufficient to require a new
   trial as newly discovered evidence, there appearing a lack
   of diligence on the part of the defendant to procure it.

ERROR to District Court, Laramie County; HON. WILLIAM
C. MENTZER, Judge.

William L. Jones was convicted of larceny and brings
error. The material facts are stated in the opinion.

*H. Donzelman,* for plaintiff in error.

The evidence is insufficient to sustain conviction; the only
evidence upon which the jury could find the verdict of guilty
is the testimony of one Bush, who stood in the relation of
an accomplice, and whose testimony was not corroborated
(Stone v. State, 118 Ga., 705; Kelly v. People, 192 Ill., 119;
Com. v. Scott, 123 Mass. 222; State v. Kubbman, 152 Mo.
100; People v. Hare, 57 Mich. 505; People v. O'Neil, 109
N. Y. 251; Ayers v. State, 88 Ind. 275; People v. Mimi,
120 Mich. 530; U. S. v. Smith, 27 Fed. Cases No. 16322;

U. S. v. McKee, 26 Fed. Cases, No. 15685). He admitted participation in the theft and must be considered an accomplice (Bauer's Law & Collection Co. v. Bradbury, 84 Pac. 1007; Campbell v. Campbell, 120 Iowa 317; Wingen v. May, 99 Mo. 809). His testimony was contradicted by several witnesses as to material matters; he was at the time under sentence for conviction on a horse stealing charge on a plea of guilty; he was shown to be of bad character and undeserving of belief. The testimony of Frank Sinon should have been excluded.

The testimony of Frank Sinon was a matter of surprise that ordinary prudence could not have guarded against, and a motion for new trial should have been granted on that ground (Blackburn v. Crowder, 110 Ind. 127). A new trial should have been granted on the ground of newly discovered evidence (State v. Albert, 114 La. 70, and cases cited). The verdict is unsupported by sufficient evidence.

*W. L. Walls, Attorney General; T. Paul Wilcox, Deputy Attorney General; L. C. Sampson* and *Sam M. Thompson,* for defendant in error.

There is no statutory requirement in this state that the testimony of an accomplice shall be corroborated in order to sustain conviction; under the common law a conviction upon the uncorroborated testimony of an accomplice will stand, if it satisfies the jury of the guilt of the accused beyond a reasonable doubt (Crawford v. State, Tex. 34 S. W. 927; Armstrong v. State, 26 S. W. 829-830, 33 Texas Cr. Rep. 417; Walker v. State, Tex. 37 S. W. 423; Anderson v. State, 45 S. W. 15, 39 Texas Cr. Rep. 83; Harris v. State, 75 Tenn. 124, 126). The assignment of error on the ground of accident and surprise was addressed to the discretion of the trial court and the ruling thereon is not reviewable (Cross v. People, 47 Ill. 152, 158, 95 Am. Dec. 474; In re. Rowe U. S. 77 Fed. 161, 165, 23 C. C. A. 103; Polk v. State, 36 Ark. 117, 126; Miller v. Commonwealth, 78 Ky. 15, 22, 39 Am. Rep. 194; Barrara v. State, 42 Texas 260, 263; Moynahan v. People, 167 Pac. Rep. 1175, 1176).

There was no error in refusing a new trial on the ground of newly discovered evidence, it not appearing that defendant used diligence to procure the same, prior to the trial (Talbot v. McDougall, 3 Upper Canada Queens Bench Rep., Old Series, p. 644; Seward v. Cease, 50 Ill. 228; Bender v. Keil, 34 Misc. N. Y. 395, 69 N. Y. Sup. 655).

BEARD, CHIEF JUSTICE.

The plaintiff in error, William L. Jones, was convicted of the crime of larceny and sentenced to a term in the penitentiary. From that judgment he brings the case to this court by proceedings in error.

The errors assigned are: 1. Insufficiency of the evidence to support the verdict and judgment. 2. Newly discovered evidence.

The property alleged to have been stolen was a certain gray mare, the property of Wesley Kelly. The evidence discloses that the mare was put in the barn of Kelly, situated a little more than a mile from the town of Pine Bluffs, where Kelly resided, about 5:30 or 6 o'clock on the evening of November 21, 1916, and disappeared therefrom some time between that hour and the next morning. The only evidence in the record tending to connect Jones with the larceny is the testimony of one Bush, a witness for the prosecution, a young man about twenty-one years of age at the time of the trial, who had theretofore been convicted of the larceny of a horse upon a plea of guilty, and was at the time of the trial under sentence therefor in the industrial institute in this state, and who admitted that he had stolen other horses. His testimony was to the effect and substantially as follows: That he went to the ranch of Jones, which is about twenty-two miles from Pine Bluffs, on the evening of November 20, 1916, for the purpose of going to work for Jones. On the next day he accompanied Jones to Pine Bluffs with a load of wheat, where they arrived in the evening about five o'clock, unloaded the wheat at the elevator, put up the team in Anderson's livery barn and went together to supper about seven o'clock. After supper went to Robinson's store, re-

mained there about an hour, saw Mr. Hastings, Mr. Jones and Mr. Bloom there. Went from there to Johnston's store, where Jones and Hastings came in, was there probably twenty minutes and went out with Hastings and Jones. Went with them to MacSheedy's, was there fifteen or twenty minutes. Went from there with Hastings and Jones to Simon & Sellers' saloon, was there a short time, went from there to the drug store, then back to the saloon. Saw Jones and Hastings there. Stayed there a few minutes. Went to Anderson's livery barn. Jones and Bloom were there. Was there a few minutes and went back to saloon, where Jones came in later. Jones motioned to me to follow him outside. Hastings went out at same time. Hastings, Jones and I went to Anderson's livery barn. Jones said he wanted to give Hastings the slip. Jones and I went to Bloom's barn. Found Bloom there. On the way down Mr. Jones had told me he had a horse down at Frank Bloom's barn he wanted me to ride out to his place. I told him all right, so we went into Frank Bloom's barn and he pointed the horse out. The horse was already saddled and bridled, and he said: There is the horse. They told me to be careful of this horse, that he hadn't been ridden much. Jones told me that, and also gave me instructions not to tie my reins together, so if she got away and throwed me or anything I could catch her again, and Bloom spoke up and told Jones to tell me to go out the State line road, and I didn't do it. It must have been about eleven o'clock. (On cross-examination he said 10:30.) That he led the horse out in the street, got on it and rode out to Jones' place, arriving about four o'clock in the morning, put the horse in the barn, fed it, talked with Mrs. Jones, who was in bed. Jones came home about five o'clock in the evening. He told me Wesley Kelly was looking for this mare, that he had been down past Frank Bloom's place with a car, and that he had to get her out of there that night; that Kelly might be out there the next morning. After he put his team away and got supper, he saddled his horse and gave me instructions to saddle my horse. He said it would be best for me to go along, as they

might come looking for me. He told me it was Kelly's mare. Jones led the Kelly mare and rode one of his, and I came along behind on a horse of mine, and we went north and east about forty miles across country until about two o'clock the following morning. Jones left me in the pasture there, said he would ride down to the house and see if this fellow was there, where he was going, came back and said it was all right. We took the mare down and put her in the barn A fellow by the name of Nelson came out and Jones introduced me to Nelson. We went in the house and Nelson got Jones and I a bite to eat and some coffee. We sat there and talked quite a while. I went to bed and Jones and Nelson sat up and talked. Jones came in while I was asleep and we slept together. We got up the next morning about the same time, about eight or nine o'clock. Jones planned to go home in the afternoon and instructed me to stay until the following morning and drive a cow home, which he had bought down there, which I did, arriving at Jones' ranch about five o'clock in the evening.

The foregoing is the substance of all the testimony of the witness Bush tending to connect Jones with the larceny. Jones testified, in substance, that Bush accompanied him to Pine Bluffs with the load of wheat; that they arrived there in the evening, had supper together, that he was at several places in the town with him during the evening up to about 9:30 o'clock, at which time he went to the hotel kept by Beaver, and went to bed there about 10 o'clock that evening. In that statement he was corroborated by Beaver, who testified that Jones went to bed about ten or between 10 and 11 o'clock. Jones denied being with Bush after about 9:30 o'clock, denied being with him or Bloom at Bloom's barn, or that any such conversation as related by Bush as taking place at the barn was had. Denied being at Bloom's barn that evening. Stated that he went to Anderson's livery barn to attend to his team before going to the hotel, and that Bush did not go with him. Denied being at the saloon. Hastings testified that Jones and Bush were at the saloon and that the three went to Anderson's barn about 11 o'clock,

and that he did not see them later. Bloom testified that he was not at his barn that evening with either Bush or Jones; that he left Jones on the street about 9:30 o'clock and went home and was not out again that night. That neither Bush nor Jones were at his barn that evening to his knowledge. That Bush told him he was going to Cheyenne on the train, No. 17, that night. (It appears from other testimony that No. 17 was due in Pine Bluffs at 10:10 p. m.) Mrs. Bloom testified that her husband came in about 9:30, or a few minutes thereafter, and went to bed about 10 o'clock. Jones further testified that Bush told him on the way to town that he was going out in the country that evening to a party, and later that he was going to Cheyenne. That he went home the next day, arriving there in the evening, and that Bush was not there. That he started to Nelson's alone the next morning for a cow which he had bought at a sale; that he overtook Bush about a mile or mile and a half from Nelson's riding a gray mare and asked him where was going, and he replied: "To Nelson's." That he had never seen this gray mare before that time and did not know to whom she belonged. That he was going right back home, and Bush said: "If you want to go back, I will drive the cow back for you tomorrow," which he did. That Nelson's place is about twenty-five miles from his place. Mrs. Jones testified that Bush was not at the Jones' place after he left to go to Pine Bluffs on November 21st, until he returned with the cow on the 24th; that Jones started for the cow in the morning about 7 or 7:30 o'clock, and that one Verne Seguine was there at that time. Seguine testified that he was at the Jones' place on the morning Jones started for the cow; that there was no one with Jones, and that he did not see Bush there at that time. W. A. Sherrill, who resided at Crawford, Nebraska, testified that he bought the mare from Nelson at Crawford; and that she was claimed and taken from him by Kelly.

We have set out at considerable length the material testimony in the case, as this court has always followed the rule that it will not reverse a judgment on the ground of the in-

sufficiency of the evidence to support the verdict of a jury, or the findings of the trial court, if there is in the record substantial credible evidence to support it. But in the present case the only evidence upon which the jury could rightfully find the defendant guilty was the testimony of the witness Bush. Considering the character of that witness, the improbability of his story and the fact that he was directly contradicted by so many witnesses on material matters, forces one to the conclusion that his evidence is neither substantial nor credible. The animal was stolen from a barn a mile or more away from the town of Pine Bluffs, where the owner lived and was engaged in business, sometime during the night of November 21, 1916; and according to Bush's testimony it must have been before 10:30 on that evening. It is highly improbable that a thief at that time of night would take the stolen animal to a small town where the owner lived, and while business places were open and people were on the streets. There is no evidence that Jones was at Kelly's barn that night, or was out of Pine Bluffs.

The material evidence, claimed to be newly discovered, consists of the evidence of the man Nelson mentioned by the witnesses. In his affidavit attached to the motion for a new trial, he states, in substance, that on the afternoon or evening of November 23, 1916, John Bush came to his home and had with him two horses, one a gray mare. That Bush remained there that night, and the next morning Bush wanted to trade the mare to him, but no trade was made. That Bush then wanted to sell the mare to him and that he then bought the mare from Bush for fifty dollars. That he never purchased any horse or mare from William L. Jones, the defendant. That this was the same gray mare he took to Crawford, Nebraska, and sold there. That evidence was material; but, according to Jones' own testimony, he knew Bush was at Nelson's with this mare on Nov. 23; and there is no sufficient showing in the record of reasonable diligence to procure it and present it at the trial.

Reluctant as appellate courts are to set aside the verdict of a jury, a careful consideration of all of the evidence in-

this case satisfies us that it is one of the few cases which comes within the exception to the general rule, and that there is not in this record sufficient substantial credible evidence to support the verdict and judgment. For that reason the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

*Reversed.*

POTTER, J., and BURGESS, DISTRICT JUDGE, concur.

BLYDENBURGH, J., being unable to sit, HON. JAMES H. BURGESS, Judge of the Fourth Judicial District, was called in and sat in his stead.