(No. 21561.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM LAWSON *et al.* Plaintiffs in Error.

*Opinion filed February 23, 1933.*

VIRGIL M. JACOBY, (MANUEL M. WISEMAN, of counsel,) for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, H. C. LINDAUER, State's Attorney, and J. J. NEIGER, (CURT C. LINDAUER, ED. F. BAREIS, and JOHN T. THOMAS, of counsel,) for the People.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

This cause is here on writ of error to review the judgment of conviction of plaintiffs in error, William Lawson and Ray Irwin, in the circuit court of St. Clair county, of the crime of stealing an automobile of the value of $500 from Wilbur P. Mitchell of Belleville.

Mitchell, a mine worker, on March 10, 1932, parked his car at the mine and when he quit work at 4:00 P. M. it was gone. He did not state at what time he parked it. When he was recalled to testify that the license plates shown him were not on his car when it was stolen, on cross-examination plaintiffs in error's attorney appealed to the discretion of the court to allow the question, "When did you last see your car?" The court refused to allow the question to be answered. One of the defenses was alibi, and it was material and important to fix the time of the larceny as nearly as possible.

The evidence shows that the car was in the possession of the plaintiff in error Lawson from March 13 or 14 until March 18, but that the only time plaintiff in error Irwin was connected in any way with it was on March 18, when he rode from Alton to Springfield in it with Lawson. Lawson and Irwin were arrested on the west side of the court house square in Springfield, and at the time of their arrest, which was about 2:00 o'clock in the afternoon, they were

standing on the sidewalk, with the car in question parked one-half block away. Lawson told the officers who arrested him that he had bought the car from a man named Art Winch, who lived on Hillcrest avenue, Sering addition, Alton, Illinois; that Winch worked on a government boat, doing rip-rap work along the river, and that the transaction in which he got the car took place in Faulstich's poolroom, in Alton. Irwin first stated that he had hitch-hiked to Springfield but later admitted that he had ridden up with Lawson. Lawson had given a bill of sale for the Ford coupe to Edward Hall, at Springfield, signing the name "Winch" and acknowledging the same before Carey E. Barnes, a justice of peace there, stating that he thought that was the name he should use because that was the name of the man who sold it to him. Two of the numbers on the block of the Ford coupe had been altered. The car bore Illinois license plate 742-463, which was issued to B. C. Voltmer, Granite City, for an Essex automobile. William Schaefer, a police officer of Springfield, was permitted to testify that he made an investigation to trace Art Winch but found no one by that name, although it developed on cross-examination that Schaefer did not make a personal investigation but telephoned to the chief of police at Alton, and that all he knew was what the chief of police of Alton had told him about Winch. The chief of police of Alton did not appear to testify.

Ten documents were taken from the person of Lawson, which were: A bill of sale by Ernest Roche for the Ford coupe in question, which was unsigned and without the name of a grantee; a bill of sale for the automobile in question from the Carter Auto Exchange, Twenty-first and Madison avenue, Granite City, Illinois, to Arthur Winch for the consideration of $530, reciting a down-payment of $320 and the execution of six promissory notes, each in the sum of $35, maturing monthly; the six promissory notes above mentioned, each marked "paid;" a receipt for $320

signed "E. M. Carter, Carter Auto Exchange;" to Arthur Winch; and the bill of sale from Winch to Edward Hall referred to above. Sheriff Munie, of St. Clair county, testified that there was no Corde Auto Exchange at Twenty-first and Madison avenue.

The court, over objection, allowed a witness to testify that the number on the automobile block had been changed. Testimony was also allowed that the license number on the car had been issued for an Essex car. Neither Lawson nor Irwin was shown to have had any knowledge or connection with these crimes. The testimony was incompetent and prejudicial.

When the attorney for plaintiffs in error attempted to dictate to the reporter an objection to a ruling of the court, the court said, "Dictate your motion but keep within the facts." When B. H. Bryant was called as a witness for the defendants, after being asked to state his name the following colloquy took place:

The court: "The court of its own motion will exclude this witness because the court saw this witness and counsel at lunch together.

Mr. Jacoby: "And I had lunch with Mr. Schaefer; ask him if we as much as mentioned the case.

The court: "What is the nature of the testimony of this witness? After this, when counsel comes into the county, or any other county where the presiding judge is present, the rule will be promulgated binding on everyone."

Bryant was a most important witness, and had his uncontradicted testimony been believed by the jury they must have acquitted Irwin. The witness testified that he was employed as building and supply commissioner for the Alton school district, and that on March 10, 1932, Irwin worked for him on the job that was being done on the high school grounds, from 8:00 A. M. to 4:30 P. M. Alton is in Madison county, about thirty-seven miles from Belleville.

After the conclusion of the State's case a motion to instruct the jury to find the defendants not guilty was made and overruled. Counsel for the defendants then asked the indulgence of the court for a period of five minutes within which time to talk to the defendants, his clients. The court ruled as follows: "Motion at this time will be by the court denied, for the reason that at the beginning of the trial, on call of cause, counsel announced ready for trial, and during the entire trial there has been an effort on the part of counsel for defendants to delay the trial." There was nothing whatever in the record to warrant the strictures of the court as to plaintiffs in error's counsel. No question is raised that in what he was dictating he was not keeping strictly "within the facts." The court's criticism of counsel's conduct with reference to the witness Bryant in the presence of the jury was improper, and, as the result showed, necessarily tended to cast suspicion upon the testimony of Bryant and the other witnesses testifying to Irwin's alibi. The trial of the cause, including the selection of the jury, the hearing of evidence, the arguments of counsel and the instructions by the court consumed less than a day, and the record discloses that at no time during the entire trial was there an effort on the part of counsel for the defendants to delay the trial. There was no extended cross-examination of witnesses, no large number of objections made calling for a ruling by the court, counsel did not make objections in some instances where he might reasonably have done so, and the only thing shown by the record which even squinted at an effort for delay was the making of an application for a change of venue, which was denied.

At the People's request the court instructed the jury that "the court instructs you that the possession of stolen property, soon after the theft was committed, is *prima facie* evidence that the property was stolen by the person in whose possession it was found—that fact of itself, if you

believe from the evidence, beyond a reasonable doubt, it is a fact, will authorize a conviction, unless the evidence in the case or the surrounding circumstances are such as to raise a reasonable doubt of such guilt." This instruction does not state the law correctly. The presumption of guilt does not arise from the mere recent possession of stolen property, but to give rise to such presumption the possession must also be exclusive and unexplained. (*People* v. *Prall,* 314 Ill. 518; *Watts* v. *People,* 204 id. 233.) Where the evidence shows that the defendant in whose possession the stolen property was found has given an explanation as to such possession, it is not proper to instruct the jury that the possession of the stolen property soon after the commission of the offense is *prima facie* evidence of the guilt of the person in whose possession such property is found, and in no case is it proper to give an instruction on the subject containing the words *"prima facie"* without an explanation of the meaning of such term. (*People* v. *Weisman,* 296 Ill. 156; *People* v. *Surace,* 295 id. 604.) In *People* v. *Lehner,* 326 Ill. 216, this court, in discussing an instruction on this subject, said: "The foregoing instruction was likely to mislead the jury. It assumes, in the first place, that the possession of the recently stolen property was not explained by the defendant. His explanation, whether truthful or otherwise, was his real and only defense to the charge of larceny. It is true that the recent, exclusive and unexplained possession of stolen property soon after the theft was committed is sufficient to authorize a conviction. In a case where the defendant offers an explanation of his possession of the stolen property it is the province of the jury to consider that explanation together with all the other facts in the case, and if, after such consideration, the jury have a reasonable doubt of the defendant's guilt it is their duty to return a verdict of not guilty. If such explanation and all the other facts connected with the case are not sufficient to raise a reasonable doubt the jury should return

a verdict of guilty. The jury should have been so instructed without leaving them to believe or to assume that such possession was unexplained by the defendant." The giving of the instruction in this case was particularly erroneous and prejudicial, in that no evidence was introduced showing or tending to show that Irwin ever had possession of the car or claimed any interest in it. *People* v. *Blades,* 329 Ill. 182.

The court likewise gave to the jury the following instruction:

"The court instructs the jury if you believe from the evidence that the defendants, at or about the time the charge contained in the indictment was preferred against them, fled to a distant place, and that such flight was induced by the charge, the jury may consider the same in determining the guilt or innocence of the defendants."

The plaintiffs in error were arrested in Springfield on March 18, 1932. Lawson's explanation of his presence in Springfield was that he came there to sell a car to Edward Hall, with whom he had had previous dealings. The indictment in this case was found April 15, 1932. There is no evidence in the case that the defendants, at or about the time the charge contained in the indictment was preferred against them, fled to a distant place. Instructions should not only state the law correctly, but they should be applicable to the case and give the jury to understand what the law is that is applicable thereto, and the giving of an instruction not so applicable and which has a tendency to mislead the jury is prejudicial and reversible error. *People* v. *Organ,* 345 Ill. 339; *People* v. *Black,* 309 id. 354.

Plaintiffs in error did not have that fair and impartial trial guaranteed to them by the constitution of the State of Illinois, and the judgment of the circuit court of St. Clair county is reversed and the cause remanded to that court.

*Reversed and remanded.*