(No. 28232.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ESCO PHELPS, Plaintiff in Error.

*Opinion filed Nov. 22, 1944—Rehearing denied Jan. 16, 1945.*

H. E. SKINNER, of Marion, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and LAN HANEY, State's Attorney, of Herrin, for the People.

Mr. Justice Thompson delivered the opinion of the court:

By writ of error this case comes from the circuit court of Williamson county, where plaintiff in error, Esco Phelps, (herein called defendant,) was found guilty by a jury of the crime of larceny of five motor-vehicle tires. Motions for a new trial and in arrest of judgment were made and overruled and defendant was sentenced to the penitentiary.

On Sunday, March 5, 1944, shortly after 5:00 P. M., Vincent Blazine parked his car at the Farris tavern in Williamson county. When he started to go home about 10:30 that evening it was gone. March 7, 1944, Robert Ramsey, chief of police of the city of Marion, accompanied by Joe Shafer and Trevor Gerstkemper, two night policemen, went to the home of Amon Thomas in Marion in said Williamson county, where they discovered five motor-vehicle tires, which were identified by their numbers as the tires on the car stolen from Blazine. Thomas, at whose home the tires were found, testified that he lived in Marion; that he had three rooms and Robert Newton lived with him; that on the night of March 5, the defendant, Phelps, came to his house and asked if he could store some stuff, but did not say what it was; that later the defendant came back with some man unknown to the witness, who brought the five tires in through the back door; and that defendant did not touch the tires or have anything to do with them.

The defendant testified in his own behalf. He denied any knowledge of the stolen tires and attempted to prove an alibi. He testified that on March 5, 1944, he picked up Fred Nelson and his wife in Marion and drove them to the home of Charlie Davis at Scottboro; that he left Marion around 9:00 P. M.; that in backing out of the Davis driveway he ran into a ditch and that he remained there with his car in the ditch all night; that he ran his engine frequently during the night to keep warm; and that Charlie Davis's brother pulled him out the next morning. He said

that during the night he went to John Samples's home about 10:00 or 10:30 and asked him to pull him out of the ditch, but Samples had no gas; that Armand Winn and Arlie Murphy came by about 10 o'clock and again came back later; that about 5:00 o'clock in the morning he went into the Davis house and drank a cup of coffee. Charlie Davis testified that on Sunday, March 5, a car sat in the ditch in front of his house all night; that he heard the engine running several times in the night; that he did not see defendant that night, but the next morning about 5:00 o'clock he came in the house and drank a cup of coffee. Upon cross-examination he stated he could not be positive about the date, but remembered it was Sunday. Arlie Murphy and Armand Winn testified that on the night of March 5, while on their way to the New Virginia tavern, about 10:00 o'clock, they saw defendant in his car in the ditch near Charlie Davis's place; and that on their return from the tavern after midnight they again saw him. It was stipulated that John Samples, if present, would testify that on the night of March 5, 1944, defendant came to his house about 10:30 to 11:00 o'clock and asked him to pull his car out of the ditch. Robert Newton also testified for defendant. His testimony was that he lived with the witness Thomas; and that he did not see the defendant bring the tires to their home and did not know they were there.

The contention is made by defendant that because of his denial of guilt and the claimed alibi, the verdict is contrary to the evidence. He argues there is no evidence in the record even tending to connect him with the theft except the uncorroborated evidence of Thomas, which he claims was disproved by the testimony of Davis, Murphy, Winn and Samples. Counsel contend that defendant's testimony that he picked up Fred Nelson and his wife around 9:00 P. M. on the night of the theft and drove them to Scottsboro, a suburb of Marion, five miles from the place where the theft was committed, and that he spent the night in his car in a ditch near the home of Davis, together with the

testimony of Murphy and Winn that they saw him there twice, once about 10:00 P. M., and again shortly after midnight, and with the testimony of Samples that about 11:00 P. M. defendant was at his house, and the testimony of Charlie Davis that he heard the motor of a car in the ditch running frequently during the night and that he saw defendant at 5:00 o'clock the next morning, proves conclusively that defendant spent the night of March 5, 1944, in the ditch near the Davis home and could not have committed the theft. It is apparent from the evidence that the alibi offered as a defense in this case is not complete. It does not cover the entire time during which the crime was committed. Blazine parked his car, equipped with the tires in question, at the Farris tavern shortly after 5:00 P. M. The theft occurred between that time and 10:30 P. M. when he came out of the tavern to go home. Defendant, in his testimony, gives no explanation of and makes no reference to his whereabouts on March 5, 1944, prior to 9:00 P. M. The witnesses Murphy and Winn testified they first observed him about 10:00 P. M. The witness Samples testified he saw him about 10:30 or 11:00 P. M., and the witness Davis at 5:00 the next morning. As the crime is shown to have been committed sometime during the period between shortly after 5:00 in the afternoon and 10:30 in the evening of March 5, 1944, the defendant has failed to offer any alibi proof covering at least four hours of the time during which it was possible for the crime to have been committed. When the evidence offered to establish an alibi, even though taken to be true, does not cover the entire period when the crime was alleged to have been perpetrated, it is not convincing. *People* v. *Bote*, 379 Ill. 245; *People* v. *Mitchell*, 368 Ill. 399.

Defendant further argues that even though the evidence of Thomas be assumed to be true, it shows defendant's possession of the stolen tires was not exclusive, and is therefore not sufficient to sustain the finding of guilt. It is true that mere recent, unexplained possession of stolen property,

is not, alone, sufficient to authorize a presumption of larceny, but to give rise to such presumption of guilt, the possession must also be exclusive, as well as recent and unexplained. (*People* v. *Lawson*, 351 Ill. 457; *People* v. *Lehner*, 326 Ill. 216.) In order that an inference of guilt may be drawn from possession of goods recently stolen, it must be shown that there was an actual personal possession on the part of the accused, either singly or jointly with others acting in concert with him. (*People* v. *Scholler*, 385 Ill. 93; *People* v. *Strutynski*, 367 Ill. 551; *People* v. *Barnes*, 311 Ill. 559.) The accused's possession of the stolen property may be jointly with another and still be exclusive. (*People* v. *Strutynski*, 367 Ill. 551.) If the evidence of Thomas is believed, there is enough evidence in the record to show that defendant was in the exclusive possession of the stolen tires. The fact that he was not the person who carried the tires into the house is unimportant, because he was, at least, in their joint possession with the other man. The recent, unexplained and exclusive possession of stolen property soon after the theft is sufficient to authorize a conviction. *People* v. *Lawson*, 351 Ill. 457; *People* v. *Lehner*, 326 Ill. 216.

Defendant urges that Thomas is a self-confessed accomplice and an ex-convict and therefore his testimony is open to grave suspicion and should be acted upon with the utmost caution. Thomas's conviction of burglary and larceny in 1926, and also defendant's conviction in 1928 of the same offense, were in evidence for the consideration of the jury in determining the credibility and weight to be given to their respective testimony. There was a direct conflict in the testimony of Thomas and that of the defendant, and it was the special province of the jury to determine which of the two was telling the truth. It evidently believed the story told by Thomas; and we are not warranted in disturbing the verdict merely because the jury chose to believe the testimony of Thomas and not that of the defendant. (*People* v. *Price*, 371 Ill. 137; *People* v.

*Geisler,* 348 Ill. 510.) The law has committed to the jury the determination of the credibility of the witnesses and of the weight of their testimony. There are many things which a jury has the opportunity of observing on the trial which do not appear from the printed record, such as the appearance and demeanor of the respective witnesses, their manner of testifying, and a great many other circumstances which are important factors in determining the credibility of the witnesses and the weight that should be given their testimony. Upon a careful consideration of the record we cannot say that the verdict is, as contended by defendant, contrary to the evidence, or that the evidence is such as justifies us in entertaining a reasonable or well-founded doubt of defendant's guilt.

The further point is made by defendant that the trial court erred in refusing to grant his motion for a new trial because of the alleged misconduct of Henry Elders, a juror. There was filed with the motion for new trial the affidavit of three persons that during the progress of the trial they overheard a conversation between Henry Elders, one of the jurors, and Joe Shafer, a witness for the People, at the head of the stairway to the court room; that they overheard Shafer say to the juror; "I heard that Esco had pawned a pistol with Sam Barbaro and I went to Barbaro and got it," and heard him say further: "He has been mixed up in several other jobs around Marion, but we can't prove it, but he ought to be convicted on general principles." Upon the hearing on this motion both Shafer and Elders denied any such conversation took place. They testified that they talked in the hallway outside the court room; that Elders asked Shafer about his father and they talked about the Republican national convention which was then in session; that they did not talk about the defendant or the case or about a pistol. Tom Lewis, a member of the fire department, testified that he was standing near and heard the conversation; that nothing was said about the case nor about a pistol nor about the defendant being mixed

up in other jobs and ought to be convicted on general principles; that they only talked about Shafer's father and about the presidential election. The only witness produced by defendant at the hearing on his application for a new trial was Jimmie Baker, one of the three witnesses whose affidavit was attached to the motion; and this witness in his testimony did not mention or repeat any conversation or testify that he heard any conversation between Shafer and the juror Elders. The determination of a motion of this character is committed, in the first instance, to the discretion of the trial court; and it is apparent, in view of the evidence on the hearing, that there was in this instance no abuse of such discretion.

Defendant claims the court was manifestly prejudiced against him. Our examination of the record discloses no basis whatever for this accusation.

Defendant has assigned other alleged errors, but, as none of these is mentioned or commented upon in his brief, they must be treated as abandoned. It has long been the settled rule that errors assigned and not argued cannot be considered by a reviewing court.

Plaintiff in error has inserted in the abstract, under the title "newly discovered evidence," an affidavit of one Lee Emery, stating that on two occasions he had seen Amon Thomas driving an automobile. This affidavit only tends to impeach the witness Thomas on an immaterial matter and is not contained in any part of the transcript certified by the clerk. The practice of inserting in the abstract and brief, and arguing to this court, matters outside the record cannot be approved by this court, and the affidavit will be stricken.

We find no substantial or reversible error in the record and, for that reason, the judgment of the circuit court is affirmed.

*Judgment affirmed.*