(No. 33310.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER WHEELER, Plaintiff in Error.

*Opinion filed March 24, 1955—Rehearing denied May 16, 1955.*

C. E. TATE, of Champaign, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BEN F. RAILSBACK, State's Attorney, of Pekin, (FRED G. LEACH, and GEORGE W. SCHWANER, JR., of counsel,) for the People.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

An indictment filed in the circuit court of Tazewell County on February 9, 1953, charged that plaintiff in error, Walter Wheeler, and one Ellis R. Williamson committed the crime of armed robbery in that county on December 14, 1952. Wheeler's motion to quash the indictment was overruled and the case proceeded to trial as to Wheeler alone on May 14, 1953. Evidence was heard and the jury was unable to agree upon a verdict. The cause was tried as to Wheeler a second time beginning on December 14, 1953. The jury found him guilty as charged and that his age was 41 years. Motions for a new trial, for judgment notwithstanding the verdict and in arrest of judgment were

overruled. Thereupon the court sentenced plaintiff in error to serve a term of not less than five years nor more than twelve years in the Illinois State Penitentiary. There are numerous assignments of error that have not been argued and are therefore waived. (*People* v. *Ulrich*, 411 Ill. 316; *People* v. *Smith*, 404 Ill. 125.) The ones properly presented for our consideration involve the admission of certain evidence over the objection of plaintiff in error, alleged improper remarks of the State's Attorney and a consideration of the sufficiency of the evidence in view of a defense of alibi. A review of the evidence presented by the record is therefore necessary.

The evidence for the People shows that plaintiff in error, Walter Wheeler, hereafter referred to as the defendant, and a person later identified as Ellis R. Williamson registered at a hotel called the Taylor House in Havana, Illinois, shortly after 8:00 P.M. on Friday, December 12, 1952. Defendant signed the register card with the names Kerry (or Kenny) Johnson and Harry Johnson. The room clerk, Fred Beck, assigned them to room 309 and they went upstairs together. The following morning at about 11:00 o'clock the men were seen leaving the hotel together by Ada Vanderarend, the clerk then on duty.

Between 4:30 and 5:00 o'clock P.M. on the same day (Saturday, December 13) two men, later identified as the defendant and Williamson, appeared at a tavern known as the Colonial Club located near Pekin, in Tazewell County. There they sat together at the bar where they were observed by Jack Cranwill, one of the owners who served them drinks, and by A. W. Farrar, the other owner of the club. On leaving, the men drove away in a Chrysler automobile. The same men returned to the tavern between 11:00 and 12:00 o'clock that night. On this occasion they sat at a table and a waitress served each of them a ham sandwich and a bottle of beer. While in the tavern they were observed by Jack Cranwill, A. W. Farrar, and Duane

Hillemeyer, who had known defendant previously, as well as by the waitress who took their order. They left the premises shortly after midnight.

At about 2:00 o'clock A.M. on Sunday, December 14, the tavern in question was closed. A. W. Farrar, one of the owners, left about an hour later leaving Emma Bruder, a cleaning woman, on the premises. Jack Cranwill, the other partner, had left earlier and proceeded to walk toward his home which was located only about 120 yards from the tavern. As Cranwill approached his garage, defendant, who was armed, stepped from behind the building and ordered Cranwill back of the garage where Williamson was standing. Cranwill was held there at gunpoint until after everyone had left the tavern except the cleaning woman. Then the men forced Cranwill to walk with them to the tavern where all three entered. The interior of the tavern was well lighted at the time and neither of the robbers was masked. It was testified that defendant wore no hat but that Williamson had his hat on during the time of the robbery.

After entering the tavern, defendant held Mrs. Bruder at gunpoint while Williamson forced Cranwill to go to the kitchen where the safe was located. Cranwill opened the outer door of the safe by working the combination but found he had left his keys on the bar counter. A key was needed to unlock the inner door of the safe. The defendant and Mrs. Bruder then entered the kitchen with the keys and Cranwill opened the safe. Thereafter defendant tied the hands and feet of Cranwill and Mrs. Bruder and the men took from the safe a large amount of currency, checks and a cloth bag containing 199 silver dollars. After emptying the cash register and taking a gun belonging to the tavern the men left. Mrs. Bruder was able after a time to free Cranwill who then freed her. Cranwill went immediately to his house where he called the sheriff of Tazewell County. An alarm was broadcast.

At about 4:20 A.M. on the same date, Ivan Priddy, a police officer of the Havana, Illinois, department, received a radio message regarding the robbery and drove his squad car to a point on the highway east of Havana. After being there 20 to 25 minutes he observed a Chrysler car coming from the east at a high rate of speed. He followed it into Havana and thence to the parking lot behind the Taylor House. Two men got out of the car and entered the hotel. Fred Beck, the room clerk who had registered the men previously, saw the same two enter the hotel together sometime after 4:00 o'clock that morning. They went upstairs. Shortly thereafter the policeman, Ivan Priddy, entered the hotel lobby, had a conversation with Beck, and then went out. Defendant Wheeler, who had been upstairs only a short time, then came down, stated he was checking out and asked Beck for their bill. Beck stated the bill was not ready. Defendant then when across the street to a restaurant for coffee. Priddy and Sheriff Lascelles of Mason County followed· the defendant to the restaurant where they placed him under arrest. Williamson came down the stairs in the hotel a short time later and was arrested by Priddy, Lascelles and a deputy sheriff.

Soon thereafter Sheriff George Saal of Tazewell County arrived and he and Sheriff Lascelles together searched room 309 which had been occupied by defendant and Williamson. They found a canvass traveling bag containing a cloth sack in which there were 199 silver dollars, and a suitcase, later claimed by defendant as his, containing a large amount of currency. On the morning of the same day, Sunday, December 14, both Emma Bruder and Jack Cranwill identified defendant as one of the men who had committed the robbery at the Colonial Club tavern.

Defendant testifying in his own behalf stated that prior to December 12, 1952, he had been working in a defense plant in Phoenix, Arizona. He had formerly lived in Canton, Illinois. He proposed to visit relatives up north

and contacted Williamson, whom he had not known previously, for a ride after hearing that Williamson was driving in that direction. They drove from Phoenix to Havana in Williamson's Chrysler automobile, arriving in Havana on the night of December 12. Defendant admitted that the two occupied room 309 in the Taylor House but denied that he registered as testified by Beck. He denied that the writing on the registration card in the names of the two Johnsons was his.

Defendant further testified that late the following morning (December 13) he and Williamson drove to Peoria where he waited in the car while Williamson went into several places. They then drove to Pekin and late that afternoon went out to the Colonial Club where defendant admits they were present as testified by Cranwill and Farrar. After leaving the Colonial Club defendant says Williamson told him he was going to return to Peoria, whereupon defendant stated he preferred to see a movie in Pekin. The two then separated with arrangements to meet after the movie. Williamson was waiting for the defendant when he came out of the theatre. At defendant's request Williamson then drove defendant to Canton, Illinois, to the home of Mr. and Mrs. Robert Wilcoxen, where they arrived at about 11:00 P.M. Mrs. Wilcoxen is a sister of defendant's former wife from whom he had been divorced only a short time. Williamson did not enter the Wilcoxen home but drove away. Defendant was admitted by Mrs. Wilcoxen and talked to her and her husband until about 2:45 A.M. at which time defendant and Robert Wilcoxen departed, and Wilcoxen drove defendant to Havana in his Studebaker car. Defendant says they arrived in Havana at 3:45 A.M. and that after he bought a package of cigarettes he went up to room 309 in the Taylor House.

Defendant testified that Williamson came into the room about an hour later, took from under his coat a cloth sack

apparently containing money and threw it on the bed. Defendant says he immediately thought something was wrong and went downstairs and asked Beck for his bill; that upon being advised that the bill was not ready, he went to the restaurant and was about to phone the Wilcoxens at Canton when the officers came in and arrested him. Defendant denied participation in the robbery and stated he had been in the Colonial Club only on the one occasion on December 13. He denied being there between 11:00 and 12:00 o'clock on the 13th, or at any time on the 14th.

Mr. and Mrs. Wilcoxen both testified that defendant was with them in their home in Canton between the hours of 11:00 P.M. on the 13th and 2:45 A.M. on the 14th, after which Wilcoxen drove defendant to Havana. Both stated that they learned of defendant's arrest on the same day it occurred but that they did not advise the authorities that defendant had been with them, having been advised to keep quiet about the matter by defendant's attorney.

In rebuttal the State offered in evidence certified copies of the records of two convictions of the defendant in the criminal court of Cook County of the crime of robbery, both in the year 1932. These were admitted over the objection of the defendant.

The objection of the defendant that the records of two prior convictions were improperly received is limited to the contention that they were certified only and not authenticated as defendant contends was necessary. Defendant does not say that the records were incomplete or incorrect or that they were not properly limited by an instruction of the court to the sole purpose of impeaching the credibility of the defendant as a witness. Nor does he argue that the records are not properly certified. An examination of the records introduced shows that one includes the caption, the return of the indictment into open court by the grand jury, the indictment, the arraignment of the defendant, the waiver of a jury, the finding of guilty by the court and

the judgment of conviction. The other is like the first except that a plea of guilty is shown. The records introduced meet the requirements heretofore announced by this court. *People* v. *Lane,* 400 Ill. 170; *Kirby* v. *People,* 123 Ill. 436.

Section 6 of division XIII of the Criminal Code provides that no person shall be disqualified as a witness in a criminal case by reason of his interest or his having been convicted of any crime, but that such interest or conviction may be shown for the purpose of affecting his credibility. (Ill. Rev. Stat. 1953, chap. 38, par. 734.) The statute does not state how this interest or a conviction may be shown, but in *People* v. *Lane,* 400 Ill. 170, at 173, in reviewing the earlier cases, it was said: "In the absence of any statutory provision as to what is necessary to prove prior conviction, the rule must be as at common law. (*Kirby* v. *People,* 123 Ill. 436.) In the case cited it was held that to establish a prior conviction it was necessary to prove by record or certified copy, the caption, the return of the indictment into open court by the grand jury, the indictment, the arraignment of the defendant, the record of the impaneling and the verdict of the jury, or if he waives a jury and is tried before the court without a jury, the finding of the judge, and the judgment of conviction. * * *." In the case of *People* v. *Poppe,* 394 Ill. 216, the contention was made that the Habitual Criminal Act of Illinois did not contemplate convictions of crime in other States as a basis of prosecution under the act. This court said at page 221: "We do not believe that such was the intention of the Habitual Criminal Act of Illinois, because section 2 of that act provides for 'a duly authenticated copy' to be used as proof of a former conviction, which must relate to one from a foreign jurisdiction, as certified copies of transcripts of judgments of courts within the State are admissible in evidence in Illinois. (Ill. Rev. Stat. 1945, chap. 51, par. 13.)" This court has therefore recog-

nized that proof of a former conviction of a crime in a court within the State of Illinois can be made by introducing a certified copy of the record of such conviction in a criminal case, and that the question is governed by section 13 of the Evidence Act, referred to in the *Poppe case,* which provides: "The papers, entries and records of courts may be proved by a copy thereof certified under the hand of the clerk having the custody thereof, and the seal of the court, or by the judge of the court if there be no clerk." Ill. Rev. Stat. 1953, chap. 51, par. 13.

No case has been cited that holds that an authenticated copy as distinguished from a certified copy of the record of conviction is necessary under the circumstances here presented. Defendant relies on the case of *People* v. *Novak,* 343 Ill. 355, but that decision rested upon the fact that the record introduced was incomplete in that it failed to show the return of the indictment into open court or the arraignment of the defendant. While it was stated that a former conviction could be proved only by the record or an "authenticated copy," no issue was raised as to any distinction between a certified or authenticated copy, and the case cannot be cited as authority for the proposition that an authenticated copy rather than a certified copy is required when proving the record of a court of this State in a criminal proceeding. Indeed many of the earlier cases use the term "authenticated copy" when discussing proof of former conviction but none has been cited holding that a certified copy is not admissible for that purpose.

Nor is any reason for such a rule suggested. It cannot be contended that authentication is necessary to import verity to the record of a court of this State when it is to be used in a judicial proceeding here. The requirement that it be authenticated if it is to be used in another jurisdiction is regulated by Federal statute. (U.S. Code Ann. Title 28, par. 1738.) It is not suggested just wherein the rights of this defendant were any more injuriously affected

by the receipt of a certified copy of the record than they would have been on receipt of an authenticated copy. Since the copies of the record were complete, were received for and limited to the purpose provided by statute, and no prejudice appears, it is our conclusion that certified copies of the records of the criminal court of Cook County were properly received in evidence.

Defendant next suggests that since his alibi witnesses were not impeached, they must be believed and the verdict of guilty cannot be sustained. This position is not tenable. Alibi is an affirmative defense. Where the *corpus delicti* is proved, together with evidence tending to show the guilt of the defendant, the burden of establishing the alibi rests upon him, although upon the whole case his guilt must be proved beyond a reasonable doubt. (*People* v. *Renallo,* 410 Ill. 372; *People* v. *Kerbeck,* 362 Ill. 251.) The law has committed to the jury the determination of the credibility of the witnesses and the weight to be given their testimony and this court will not substitute its judgment for that of the jury merely because the evidence is conflicting. (*People* v. *Renallo,* 410 Ill. 372; *People* v. *Mosher,* 403 Ill. 112, *People* v. *Leach,* 398 Ill. 515.) Where there is positive identification of a defendant by credible witnesses, a guilty verdict may be sustained notwithstanding there may be otherwise uncontradicted alibi evidence and even though the alibi witnesses may be greater in number than those identifying the accused. *People* v. *Renallo,* 410 Ill. 372; *People* v. *Viti,* 408 Ill. 206; *People* v. *Mosher,* 403 Ill. 112.

Here the identification of the accused by Jack Cranwill and Emma Bruder, the victims of the robbery, was positive and based upon circumstances affording ample opportunity for observation from the standpoint of time, place and lack of concealment of identity. Both victims positively identified the defendant on the day of the robbery and later at the trial. Their testimony was unshaken in any important particular. The fact that on the day of the robbery they

viewed the defendant alone and not in a lineup goes only to the weight to be given their testimony. They are corroborated by the testimony of three other witnesses who say they saw the defendant in the Colonial Club before the robbery. Two of them observed him at a time when defendant claims he was in Canton. To this may be added all of the other damaging evidence heretofore related including the fictitious registration at the hotel and Beck's positive testimony that the two men came into the hotel together sometime after 4:00 A.M. on December 14. The jury had the right to consider the improbabilities of the defendant's story, including the fact that though defendant said he came north to visit relatives, he stayed in a hotel in Havana where he had no relatives, and did not contact the Wilcoxens in Canton until 11:00 o'clock at night on the second day, at which time it is admitted he arrived unexpected and unannounced. The jury must consider that though defendant had a sister in Canton and a brother near there he failed to contact them and that the Wilcoxens, knowing that defendant was charged with a robbery at a time they say he was with them, failed to come forward with their story but elected to remain silent on advice of counsel. We are not prepared to say that the jury erred in rejecting the testimony of defendant and his alibi witnesses especially in view of the strength of the direct and positive evidence produced by the State.

Defendant contends that error was committed in admitting in evidence the bag of money found in the hotel room jointly occupied by defendant and Williamson, because defendant was not in exclusive possession of the room or the money. In advancing this argument defendant apparently has in mind the requirements of the well-settled rule that the recent, exclusive and unexplained possession of stolen property by an accused person in and of itself gives rise to an inference of guilt which may be sufficient to sustain a conviction in the absence of other facts and

circumstances which leave in the mind of the jury a reasonable doubt as to guilt. (*People* v. *Bennett,* 3 Ill. 2d 357; *People* v. *Nixon,* 414 Ill. 125.) Before the rule may be invoked exclusive possession must be proved. (*People* v. *Phelps,* 388 Ill. 618; *People* v. *Powloski,* 311 Ill. 284.) But it is equally well settled that joint possession with another can be exclusive possession within the rule. *People* v. *Phelps,* 388 Ill. 618; *People* v. *Strutynski,* 367 Ill. 551; *People* v. *Scholler,* 385 Ill. 93.

Defendant admits that he had occupied the room with Williamson from the time of their arrival until they were apprehended. There is no evidence that anyone else was in the room from the time Beck saw the two go upstairs on the morning of December 14 until the room was searched. Defendant himself admits that he was in the room when Williamson entered with the money. It is probably true, as counsel for the People point out, that the rule has no application to the facts of this case, because here we have direct rather than circumstantial evidence of the crime, in addition to the evidence of possession, and therefore the evidence of possession is admissible for whatever weight the jury might give it, even though the possession is not completely exclusive. We believe that under either view the evidence was properly admitted.

During closing argument the State's Attorney, in referring to remarks made by counsel for the defendant in his argument, said: "He also says why don't the State produce Williamson. Why don't the defendant produce him?" The court sustained an objection to the statement. The making of the statement is assigned as error. The record shows that in his argument counsel for defendant had said: "Where is Williamson? Why don't they bring him in? You know why they don't. Because Williamson would tell it so there would be no question. We can't bring him back but they can." While it is error for the State's Attorney to comment on the failure of the accused to pro-

duce witnesses who are equally accessible to the prosecution, it is not error for the State's Attorney to reply to a question propounded by counsel for the accused, and, where defense counsel has asked why the State did not produce certain witnesses, it is proper for the prosecuting attorney to ask defendant's counsel why he did not bring in the same witnesses so long as the remarks are properly limited to a reply. (*People* v. *Heywood,* 321 Ill. 380.) The remarks of the State's Attorney were invited by the remarks of defendant's counsel and defendant cannot claim he was prejudiced by the reply.

It is our conclusion that the proof of guilt offered in this case is clear and convincing and that the defendant had a fair trial free from prejudicial error. The judgment of the circuit court of Tazewell County will be affirmed.

*Judgment affirmed.*