Mrs. Don O'NEAL, a/k/a Mrs. Irene O'Neal,
Appellant (Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 3972.

Supreme Court of Wyoming.

June 29, 1972.

Gary A. Barney, of Vidakovich & Barney, Lander, for appellant.

Clarence A. Brimmer, Atty. Gen., and Wm. L. Kallal, Asst. Atty. Gen., Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

This is an appeal from a conviction in the District Court of Fremont County upon an indictment for the delivery of a fraudulent check in the sum of $50 drawn upon the American National Bank of Riverton wherein defendant had no account.

On the afternoon of May 10, 1970, defendant came into the Lucky Five Bar in Shoshoni, Wyoming, and asked the bartender to cash a check. The bartender refused. Defendant then called Mr. Blaisdell, owner and operator of the bar, and went to see him at his home. When she arrived there she told him she wanted to cash a check and that she did not have her checkbook with her. He had met her once before but asked her for identification and advised her he normally did not take counterchecks. Defendant advised him that she had money in the bank upon which the check was drawn but indicated to Blaisdell her bank account "may be a little short," but that she was selling calves and there would be money in the bank by Monday at 2:30 p. m. Blaisdell stated, "I relied that the check would be good Monday whether in or out of the bank" and that he also relied on the fact his wife felt some sympathy and sorrow for the defendant. Blaisdell's wife and children were present at this conversation but were never offered as witnesses.

As a result of this conversation he called the bar and told the bartender, "It's okay, go ahead and let her write it." The check was delivered and defendant received $50 in cash. At the trial defendant stipulated that she wrote this check and she had no account in the bank. Defendant did not testify. The only evidence in regard to any representations in connection with this check is from Blaisdell's testimony.

Defendant raises four contentions for reversal, i. e. that because complainant knew her account was a "little short" this was converted into a mere credit transaction; that there was a material variance in the date between the indictment and proof; that the State failed to prove material elements of the crime; and that there was error in the giving of certain instructions. We will specifically discuss only the first and last of these contentions (the latter insofar as it applies to one instruction) because in our view the remainder are not relevant nor important in a disposal hereof.

Appellant cites several cases holding that disclosure by the drawee of a fraudulent check at the time of its delivery that the writer did not have sufficient funds at the time of the delivery to pay the check purges this act of its criminal character and it is thereby converted into a credit transaction, and particularly that such showing rebuts any intention to defraud.[1] The State in its brief apparently concedes the full force and effect of the rule insofar as it applies to "insufficient funds" checks but contends without citing authority that the rule is completely different in the case of a "no account" check and relies for its support upon a portion of the statute itself, § 6–42, W.S.1957, wherein it appears as follows:

"It shall be prima facie evidence upon proof of the fact that the drawer or maker did not have an account with the drawee, at the time of issuance, that the drawer or maker intended to defraud."

We cannot so construe this portion of that statute, which is an enactment of a statutory presumption. It in no way attempts to change or eliminate the intent to defraud,

1. State v. Eikelberger, 72 Idaho 245, 239 P.2d 1069, 1071, 29 A.L.R.2d 1176; State v. Bell, 69 Idaho 485, 210 P.2d 392; State v. Trogstad, 98 Utah 565, 100 P.2d 564, 566; 32 Am.Jur.2d, False Pretenses, § 81, p. 225.

which is the gravamen or gist of the offense. This statutory presumption is aimed at and is directed to proof of "intent to defraud." We have been unable in our research to find a case which recognizes this distinction for which the State contends and in the absence of citation by the State are forced to conclude that no such distinction has been recognized.[2]

The portion of the statute creating a statutory presumption cannot operate to create a new or different offense. The effect of such rule or presumption is succinctly stated in 4 Wigmore on Evidence, § 1356, p. 724 (3d Ed.), as follows:

> "A rule of presumption is simply a rule changing one of the burdens of proof, *i. e.* declaring that the main fact will be inferred or assumed from some other fact until evidence to the contrary is introduced * * *."

1 Jones on Evidence, § 228, p. 435 (5th Ed.), states:

> " * * * it is well settled that the legal effect of such a statute is to cast upon the party against whom the presumption is applied the burden of going forward with the evidence. * * * "

It is evident if the State produces evidence rebutting this presumption that they would be bound thereby.

These presumptions stand only for so long as there is no evidence to the contrary and when there is credible evidence to the contrary the inference and rebuttable presumption no longer remain. 1 Wharton's Criminal Evidence, § 88, p. 169 (12th Ed.). The probative force of the presumption has no weight "when rebutted by admissible evidence." Molnar v. State, 202 Ind. 669, 177 N.E. 452, 453; 1 Wharton's Criminal Evidence, § 90, p. 176 (12th Ed.).

It appears from this record that complainant was fully alerted that the check then delivered would not be paid unless and until defendant sold calves or made further deposits. Blaisdell relied upon a promise of further action—the sale of some calves—or the credit of defendant. Upon the return of the jury's verdict it was indeed the duty of the trial judge to determine if there was sufficient "credible and competent evidence" to sustain the verdict. Jones v. State, 26 Wyo. 293, 18 P. 745, 757; State v. Vines, 49 Wyo. 212, 54 P.2d 826, 834–836; Reilly v. State, Wyo., 496 P.2d 899, 902.

We find no dispute in the evidence that Blaisdell had notice of the insufficiency of the funds available to pay the check at the time it was given and the trial court should therefore have sustained the motion for verdict of acquittal.

Although disposal of this case could rest solely thereon, because of the interrelationship of the contentions and the constitutional implications as they touch the question of the instruction hereafter discussed we have further considered Instruction 10, which is as follows:

> "You are instructed that in a case of the type charged here, it shall be prima facie evidence upon proof of the fact that the drawer or maker of the check did not have an account with the drawee, at the time of the issuance of the check, that the drawer or maker intended to defraud by obtaining money, merchandise, property, credit or other thing of value."

Defendant objected to the giving of this instruction and requested the addition of the following:

> "Prima facie evidence is evidence good and sufficient on its face and is sufficient to establish a given fact. Prima facie evidence, however, is not conclu-

---

2. See State v. Cunningham, 257 Minn. 31, 99 N.W.2d 908, 911, which is not applicable factually but suggests that "if a person has no account with the drawee bank, it necessarily follows that he lacks 'sufficient funds in or credit with such bank' as provided for in § 622.04 [fraudulent check statute]", seeming to view them as analogous.

sive but may be rebutted or corrected and will be overthrown if such rebutting evidence is sufficient."

■ The State does not deny that this instruction as it stood was improper but relies upon the contention that the trial court had discretion in instructing the jury, and defendant has failed to show it was error of the magnitude to warrant reversal. This is unsupportable in view of the fact that this instruction is directed at the very basis of defendant's theory of defense and the further fact that as given it verges on fundamental error upon a constitutional basis. The case of State v. Edwards, 269 Minn. 343, 130 N.W.2d 623, 625, is worthy of examination upon this point. In that case although the trial judge in defining "prima facie" did tell the jury that it might be disproved by some evidence to the contrary went further and distinguished between an inference and a presumption by saying:

"'* * * A presumption is an inference which the law requires the jury to make from particular facts in the absence of convincing evidence to the contrary. A presumption continues in effect until overcome or outweighed by evidence to the contrary, but, unless so outweighed, the jury is bound to find in accordance with the presumption.'"

Defendant in that case asserted there was denial of due process because the instruction reversed the presumption of innocence and authorized a presumption of guilt from failure of defendant to testify. Although defendant failed to make timely objection, the court held this was error. While this is not in any manner to suggest the unconstitutionality of the section herein discussed, the giving of the instruction in the words of the statute without explanation or definition, particularly as to its rebuttable character, might well lead a jury to believe the State was relieved of its burden of proof beyond a reasonable doubt. Thus, although the statute be constitutional, the improper application thereof by way of instruction could well raise fundamental constitutional error.

■ There is no doubt of the right of the legislature to enact statutory presumptions in criminal proceedings. Garcia v. People, 121 Colo. 130, 213 P.2d 387, 389, and cases cited therein. The presumption, however, cannot be made a conclusive one. Garcia v. People, supra; 1 Jones on Evidence, § 12, pp. 23–24; 29 Am.Jur.2d, Evidence, § 11, p. 49. Insofar as its application by way of instruction would make this in any manner conclusive, it certainly enters an area of unconstitutional action and is constitutionally impermissible.

■ "Prima facie" is a technical term beyond the understanding of laymen. This is evidenced by the terms of material which appear in texts discussing the effect of such presumption. We think the expression in the case of State v. Ruggiero, 41 N.J. 4, 194 A.2d 458, 459, nicely summarizes our view, wherein the court said:

"We add a word with respect to the trial court's use of 'prima facie' in speaking of the evidential impact of proof of possession of gambling paraphernalia. 'Prima facie,' a shorthand expression for the sufficiency of proof upon some factual issue, belongs to the lexicon of lawyers. As to jurors, the charge should say simply that it is for them to decide whether the State carried its burden of proof upon a consideration of the whole case. * * *"

It is improper in any case to give an instruction containing the words "prima facie" without an explanation of the meaning of such term. People v. Lawson, 351 Ill. 457, 184 N.E. 606, 608, and cases cited therein; Nelson v. State, 14 Okl.Cr.App. 153, 168 P. 460, 461. See 5 Wharton's Criminal Law and Procedure, § 2092, p. 260 (1957), wherein it is said:

"* * * The use of words which have a legal technical meaning should be avoided, or, if necessarily used, their meaning should be explained. But the

better practice is to couch instructions in as plain language as the facts will permit. When a definition is requested of a technical term material to the case, it is error to refuse to define it. * * *"

The court therefore erred in giving the instruction in the form in which it was given.

If the trial courts feel compelled to give an instruction including the words "prima facie" in connection with a statutory presumption, we commend their attention to the case of State v. Person, 56 Wash.2d 283, 352 P.2d 189, 192–193, 81 A.L.R.2d 1088, under paragraph number 3, which although it be dicta in that case is a clear expression of the effect of such statutory presumption.

The case is therefore reversed and remanded and the defendant ordered discharged.

Mr. Justice PARKER, concurring in the result.

I concur in the reversal on the ground that the jury was improperly instructed.