**Mark Alan MORGAN, Petitioner–Appellant,**

v.

**Fred SHIRLEY, Barren County Jailer and Frederick J. Cowan, Kentucky Attorney General, Respondents–Appellees.**

No. 89–5992.

United States Court of Appeals, Sixth Circuit.

Argued March 15, 1990.

Decided Jan. 27, 1992.*

Rehearing and Rehearing En Banc Denied March 9, 1992.

---

* This decision was originally issued as an "unpublished decision" filed on January 27, 1992.

Thomas W. Davis, Glasgow, Ky. (argued and briefed), for Mark Alan Morgan.

David A. Sexton, Asst. Atty. Gen., Office of the Atty. Gen. of Kentucky, Frankfort, Ky., Danny J. Basil, Glasgow, Ky., for Fred Shirley.

David A. Sexton, and John Gillig, (argued and briefed), Asst. Attys. Gen., Chris Gorman, Atty. Gen., Office of the Atty. Gen. of Kentucky, Frankfort, Ky., for Frederick J. Cowan.

Before NELSON, Circuit Judge, and LIVELY and WELLFORD, Senior Circuit Judges. `

DAVID A. NELSON, Circuit Judge.

Section 189A.010 of the Kentucky Revised Statutes makes it a misdemeanor to drive a motor vehicle while under the influence of alcohol. Prior to statutory revisions that became effective last July, a companion statute, KRS 189.520, created a rebuttable evidentiary presumption that a driver with a blood alcohol concentration of 0.10 percent or more at the time of testing was under the influence of intoxicating beverages.

The case at bar is a habeas corpus matter that involves Kentucky's DUI statutes as they existed before the 1991 amendments. The petitioner—who was found to have a blood alcohol content of 0.14 percent some 91 minutes after driving a pickup truck off the road—went to trial in a Kentucky state court on a misdemeanor charge of driving under the influence. During the presentation of the Commonwealth's case, and in accordance with established Kentucky practice, the statutory presumption was read to the jury as evidence. The jury

On February 26, 1992, the court designated the opinion as one recommended for full-text publication.

ultimately returned a verdict of guilty, and the petitioner was sentenced to pay a fine and spend a week in jail. The habeas corpus petition was filed in federal court at a time when the petitioner was in custody and after he had exhausted his rights of appeal in the state court system.

Although the petitioner goes through the motions of challenging the existence of a rational connection between the predicate fact (a blood alcohol content of 0.10 percent or more) and the presumed fact ("the defendant was under the influence of intoxicating beverages"), the question he argues most vigorously is whether the use of the statutory presumption as evidence required him to assume the burden of persuasion on the key element in the case. If the burden of persuasion was shifted to the petitioner, there was clearly a violation of the Due Process Clause of the Fourteenth Amendment.

The district court, which denied the habeas petition, held that a reasonable jury would have understood that the burden of persuasion remained with the Commonwealth. We agree, and we shall affirm the denial of the writ.

I

At 11:15 p.m. on Friday, April 24, 1987, a Ford pickup truck driven by the petitioner, Mark Alan Morgan, left the road and crashed through a fence. The accident took place on Country Club Lake in Barren County, Kentucky, some 2½ miles north of the municipality of Glasgow.

A Kentucky state trooper named Kent Thrasher was dispatched to investigate. Mr. Morgan was not present when the trooper arrived at the scene of the accident, but his brother-in-law, John Glass, showed up soon thereafter. Mr. Glass explained that the pickup truck belonged to him and that he had let Mr. Morgan borrow it.

The trooper then made contact with Mr. Morgan at the home of a woman who lived four or five miles away. Morgan admitted that he had been driving the pickup truck. He denied having consumed any alcoholic beverages since the accident, but it was obvious that he had been drinking at some point in the evening; Trooper Thrasher (a 20–year state police veteran with extensive experience in DUI cases) noted that Mr. Morgan was unsteady on his feet, almost to the point of staggering, and that he smelled of alcohol. The trooper administered a breathalyzer test, and a computerized report of the test results, issued at 12:46 a.m. on Saturday, April 25, indicated that Mr. Morgan had a blood alcohol content of 0.14 percent at the time of the test.

The trooper gave Mr. Morgan a citation for violating KRS 189A.010. Subsection (1) of that statute, as in effect at the time, provided that "[n]o person shall operate a motor vehicle anywhere in this state while under the influence of alcohol or any other substance which may impair one's driving ability." [1] The citation set forth some of the information summarized above, and it also indicated that Mr. Morgan was 19 years old, stood 5'10" in height, and weighed 195 pounds.

When the case went to trial before a jury in the Barren County District Court, Trooper Thrasher took the stand to describe his investigation, his observations of Mr. Morgan, the administration of the breathalyzer test, and the results of the test. The trooper acknowledged that the concentration of alcohol in Mr. Morgan's blood could have risen or fallen during the interval between the operation of the motor vehicle and the administration of the breathalyzer test, but he told the jury that he thought Mr. Morgan was intoxicated while driving.

After the results of the breathalyzer test had been placed in evidence, and over the objection of Mr. Morgan's counsel, the

---

1. Effective July 1, 1991, the statute was amended to read as follows:

"No person shall operate or be in physical control of a motor vehicle anywhere in this state:

(a) While the alcohol concentration in his blood or breath is 0.10 or more ... [or]
(b) While under the influence of alcohol...."

court read to the jury the complete text of KRS 189.520(3) and (4). Before reading the statute, the court told the jury to "consider this as evidence in the case."

What subsection (3) said, in part, was that in a prosecution under KRS 189A.010, "the amount of alcohol in the defendant's blood as determined at the time of making an analysis ... shall give rise to the following presumptions ... (c). If there was 0.10 percent (¹⁄₁₀%) or more by weight of alcohol in such blood, it shall be presumed that the defendant was under the influence of intoxicating beverages." Subsection (4) went on to say that the provisions of subsection (3) "shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether the defendant was under the influence of intoxicating beverages." The full text of the statutory language read to the jury as evidence is set forth as an appendix to this opinion.

Trooper Thrasher was cross-examined by counsel for Mr. Morgan, and the Commonwealth rested its case after the completion of the trooper's testimony. Mr. Morgan then moved for a directed verdict. The court denied the motion. Mr. Morgan rested without presenting any additional evidence, but renewed his motion for a directed verdict. The renewed motion was denied as well.

Prior to the closing arguments of counsel, the court gave a general charge to the jury. The jury was instructed, among other things, that the defendant was to be found guilty "if, and only if, you believe from all the evidence beyond a reasonable doubt ...

"(a) That in this county on or about *April 24, 1987* the defendant was driving a motor vehicle, and

(b) That while doing so he was under the influence of alcohol or any other substance which may impair ones [sic] driving ability...."

In keeping with a line of Kentucky cases that includes *Botnick v. Commonwealth,* 266 Ky. 419, 99 S.W.2d 188 (1936), *Mabe v. Commonwealth,* 279 Ky. 432, 130 S.W.2d 805 (1939), *Jones v. Commonwealth,* 291 Ky. 719, 165 S.W.2d 566 (1942), and *Marcum v. Kentucky,* 483 S.W.2d 122 (Ky. 1972), the jury charge included no comment on the weight or effect of any portion of the Commonwealth's evidence, including the statutory presumption. It goes without saying, in Kentucky, that questions of the weight of the evidence, like questions of credibility, are for the jury; it is considered unnecessary for Kentucky trial courts to comment on such matters. *Brown v. Commonwealth,* 789 S.W.2d 748, 750 (Ky.1990); *Smith v. Commonwealth,* 8 S.W. 192, 193 (Ky.1888).

We have not been furnished a complete transcript of the charge to the jury, but we presume that the trial court complied with Rule 9.56, Ky.R.Crim.P. "In every case," Rule 9.56 says, the jury shall be instructed along these lines:

"The law presumes a defendant to be innocent of a crime, and the indictment shall not be considered as evidence or as having any weight against him. You shall find the defendant not guilty unless you are satisfied from the evidence alone, and beyond a reasonable doubt, that he is guilty. If upon the whole case you have a reasonable doubt that he is guilty, you shall find him not guilty."

Mr. Morgan has never asserted that the trial court failed to give this required charge, or that the court's instructions were otherwise defective.

After the jury returned its verdict, the court fined Mr. Morgan $350 and ordered that he be imprisoned in the county jail for seven days. We have not been told whether the conviction represented a second offense, but we note that Mr. Morgan received the minimum sentence that could be imposed for a second offense. KRS 189A.010(2)(b). In his brief on appeal, Mr. Morgan says that his motor vehicle operator's license was revoked for a period of one year. Since July of 1984, KRS 189A.070(1) has provided for a six-month revocation of the operator's license of an adult convicted of a DUI charge under

KRS 189A.010 for the first time. Only for a second offense does the statute provide for a 12–month revocation.

Mr. Morgan appealed his conviction to the Barren Circuit Court. There he argued, among other things, that the results of the breathalyzer test were inadmissible because the test was administered one hour and thirty-one minutes after the operation of the motor vehicle; that ingestion of alcohol on a full stomach can affect the rate of increase in blood alcohol content; that the jury had no way of knowing whether his blood alcohol level was rising or falling at the time of the breathalyzer test; that this, coupled with the trial court's introduction of the statutory presumption, misled the jury; and that the statutory presumption illegally shifted the burden of persuasion to him, thereby relieving the Commonwealth of its duty to prove each element of the crime charged.

The circuit court issued an opinion rejecting Mr. Morgan's arguments. The court acknowledged that "[t]he time gap problem is one frequently encountered in DUI cases," but concluded that the time lapse—which had been "ably argued" to the jury at the time of trial—went only to the weight of the evidence and did not affect the admissibility of the test results. Analyzing the argument about the statutory presumption in light of what the trial record actually showed, and noting the uncontroverted evidence concerning Mr. Morgan's state at the time of his arrest as well as the absence of any unusual circumstances tending to discredit the presumption, the circuit court concluded that "the facts proven were rationally connected to the fact presumed." (This was the test applied in *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), and *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), both of which were cited by the court.)

The Kentucky Court of Appeals and Kentucky Supreme Court declined to grant discretionary review. The present habeas corpus action was filed in the United States District Court for the Western District of Kentucky on the same day that Mr. Morgan began serving his jail sentence.

A United States magistrate issued a report recommending that a writ of habeas corpus be granted. For reasons stated in a comprehensive memorandum opinion, the district court (Meredith, J.) rejected the magistrate's recommendation. Mr. Morgan then perfected a timely appeal from the order denying the writ.

## II

In telling the jury that the statutory provisions read aloud during the presentation of the Commonwealth's evidence were to be considered "as evidence in the case," and in refraining from any comment on the weight or effect of such evidence, the Barren County District Court was doing exactly what Kentucky's highest court had said should be done in misdemeanor DUI cases. *Marcum v. Commonwealth*, 483 S.W.2d 122, 128 (Ky.1972), explained that the statute

"establishes and validates a scientific standard which otherwise would require expert testimony. A principal object of the statute is to obviate the necessity of such testimony. Since it is in that sense a substitute for expert evidence on a scientific fact, we are of the opinion that it should be read in connection with the testimony concerning the blood-alcohol content. After that testimony has been admitted, upon appropriate motion the trial judge may read or have read to the jury, as evidence, KRS 189.520[ (3) and (4) ] in their entirety without further comment by the court with regard to the weight or effect of the evidence."

*Wells v. Commonwealth*, 561 S.W.2d 85, 86 (Ky.1978), confirmed this procedure and the reason for it:

"These statutory presumptions are legislative substitutes for expert testimony devised for prosecutorial convenience in narrowly limited situations. They are not rules of law given by the court to the jury, but rather evidence which may be read without judicial comment, upon proper motion, in connection with the testimony concerning blood-alcohol con-

tent in driving while under the influence cases. As such they are the only presumptions of fact, essential to establish a crime, of which the trial court is permitted to inform the jury." (Citations omitted.)

Although the Kentucky legislature deemed it appropriate to provide a legislative substitute for expert testimony in narrowly limited situations such as that presented here,[2] and the legislative determination must "weigh heavily" with the courts, *Leary v. United States,* 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969), the statutory presumption cannot pass muster under the Due Process Clause "[unless] there be a rational connection between the facts proved and the fact presumed." *Tot v. United States,* 319 U.S. 463, 467, 63 S.Ct. 1241, 1244, 87 L.Ed. 1519 (1943). That, as the United States Supreme Court reiterated in *Leary,* is "the 'controlling' test for determining the validity of a statutory presumption...." 395 U.S. at 33, 89 S.Ct. at 1546. See also *United States v. Gainey,* 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965), *United States v. Romano,* 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965), and *Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), where the same "rational connection" test was applied by the Supreme Court.

■ Although Mr. Morgan tried to persuade the Barren Circuit Court that there was no rational connection between the 0.14 percent blood alcohol level disclosed by the breathalyzer test and the presumed fact that he was under the influence of intoxicating beverages, that effort has not been pressed very vigorously here. In his reply brief, however, Mr. Morgan does assert that "[t]he presumed fact of 'under the influence' is not rationally connected to the predicate fact consisting of a .14 BA read-

ing taken one and one-half hours after operation of the motor vehicle."

It seems to us that the evidence of Mr. Morgan's being "under the influence" at 12:46 a.m. on April 25, 1987, is (to borrow an adjective from Judge Meredith's opinion) "overwhelming." Quite apart from the fact that he had almost reached the point of staggering, Mr. Morgan's blood alcohol concentration was about half again as high as the level (0.10 percent) acceptance of which has long been recommended by the American Medical Association as *prima facie* evidence of being under the influence.

In a report published in the Journal of the American Medical Association more than a year before Mr. Morgan's accident, the Association's Council on Scientific Affairs noted that "[s]ignificant alcohol involvement in injury-causing road crashes begins with a driver BAC of 0.05%." JAMA 1986; 255:522, 523. Stating that "[d]eterioration progresses rapidly with rising BAC to serious impairment of driving skills at BACs of 0.10% and above, according to scientific consensus," and adding that "[d]rivers with BACs of 0.05% to 0.10% are significantly represented in road crash statistics," the Council went so far as to recommend "a 0.05% BAC as per se illegal for driving...." *Id.* at 526–27.[3]

It is true that 91 minutes elapsed between the time Mr. Morgan crashed through the fence and the time when his blood alcohol level was recorded. Mr. Morgan told the state trooper that he had not consumed any alcohol during that 91 minute period, however, and in light of this circumstance it was well within the province of the jury to conclude that a 19 year old man who weighed 195 pounds and who was presumptively under the influence of intoxicating beverages at 12:46 a.m. on Saturday was likewise under the influence when he drove his vehicle off the road at

**2.** The presumption could not be used in prosecutions for involuntary manslaughter or other felony cases. *Overstreet v. Commonwealth,* 522 S.W.2d 178 (Ky.1975).

**3.** The State of California has lowered its intoxication level from 0.10% to 0.08%, and Califor-

nia's alcohol-related road fatalities are said to have dropped 15 percent since that reduction became effective. PR Newswire Association release dated December 9, 1991. As noted above, Kentucky has now made it per se illegal to drive with a blood alcohol concentration of 0.10 or more.

11:15 p.m. on Friday. There can be no doubt at all, certainly, of the existence of a rational connection between the established fact of a 0.14 blood alcohol concentration "at the time of making an analysis," which is the time of which the statute spoke, and the presumed fact of being under the influence of alcohol at that time.

But the "rational connection" test is not the only one to which the constitutionality of evidentiary presumptions is subject. See *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), where, in upholding the constitutionality of a statutory presumption that the occupants of a car in which firearms were present had illegal possession of the weapons, the Supreme Court analyzed not only the rationality of the presumption but also its effect on the burden of persuasion.

The latter branch of the analysis has been most fully developed in a series of decisions involving habeas review of state court murder convictions. There the Supreme Court has scrutinized presumptions as to criminal intent in light of the "due process requirement ... that the prosecution prove beyond a reasonable doubt every fact necessary to constitute the crime charged." *Mullaney v. Wilbur*, 421 U.S. 684, 685, 95 S.Ct. 1881, 1882, 44 L.Ed.2d 508 (1975). *Cf. Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).

■ Mr. Morgan's operation of the pickup truck while under the influence of alcohol was unquestionably a "fact necessary to constitute the crime charged." Although "[i]nferences and presumptions are a staple of our adversary system of factfinding," *County Court of Ulster County*,

442 U.S. at 156, 99 S.Ct. at 2223, we must consider whether the use of the statutory presumption in this case relieved the Commonwealth of the burden of persuasion with respect to Mr. Morgan's sobriety. The inquiry turns on what a reasonable juror could have understood from the instructions given by the court: *Sandstrom*, 442 U.S. at 516–517, 99 S.Ct. at 2454–55; *Francis*, 471 U.S. at 317–318, 105 S.Ct. at 1972–73.

It is significant, we believe, that the only instruction referring specifically to the statute was the instruction to consider the statute "as evidence in the case." We see no reason here not to accept what *Francis* calls "the crucial assumption underlying our constitutional system of trial by jury," the assumption "that jurors carefully follow instructions." 471 U.S. at 325 n. 9, 105 S.Ct. at 1976 n. 9. We thus assume that the jurors did as they were told and considered the statute "as evidence"—and we have been given no reason to suppose that the jurors failed to understand that they, not the legislature, were the sole judges of the weight of that evidence.

It is true that this piece of evidence was couched in mandatory language—it "shall" be presumed—but the mandate given the jury by the court was to treat the presumption as a matter of evidence. The statute showed, moreover, that the presumption was intended to be rebuttable; otherwise, there would have been no reason to authorize "the introduction of *any other competent evidence* bearing upon the question of whether the defendant was under the influence of intoxicating beverages." KRS 189.520(4) (emphasis supplied).[4]

■ A jury instruction setting forth a mandatory presumption that is unconstitu-

---

4. In *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 158 n. 16, 99 S.Ct. 2213, 2226 n. 16, 60 L.Ed.2d 777, the Supreme Court noted that "[t]o the extent that a [mandatory] presumption imposes an extremely low burden of production—*e.g.*, being satisfied by 'any' evidence—it may well be that its impact is no greater than that of a permissive inference...." In any event, it is presumptions which shift the burden of *persuasion* that are held to be constitutionally infirm; the Supreme Court has not decided whether mandatory presumptions which merely shift the burden of *production* are also unconstitutional. *Francis v. Franklin*, 471 U.S. 307, 314 n. 3, 105 S.Ct. 1965, 1971 n. 3, 85 L.Ed.2d 344 (1985). At least one federal court of appeals has held that "a state may constitutionally shift the burden of *production* to a criminal defendant...." *Davis v. Allsbrooks*, 778 F.2d 168, 173 (4th Cir.1985) (emphasis supplied).

tional—*i.e.*, a presumption that entirely shifts the burden of persuasion—is no less unconstitutional if the presumption is rebuttable, notwithstanding that its rebuttable character may make it "less onerous from the defendant's perspective." *Francis*, 471 U.S. at 317, 105 S.Ct. at 1972. But assuming they are rational, mandatory rebuttable presumptions violate the Due Process Clause, as far as the Supreme Court has told us, only "if they relieve the State of the burden of persuasion on an element of an offense." *Id.* at 314, 105 S.Ct. at 1971. The question to which we return, then, is whether the statutory presumption which was read into evidence in the case at bar shifted the burden of persuasion on the under-the-influence element of the offense charged.

The answer, we believe, is to be found in *Sandstrom*. There the Supreme Court told us that the line of cases which includes *Leary, Turner* and *Tot* "did *not* ... involve presumptions of the conclusive or persuasion-shifting variety." *Sandstrom*, 442 U.S. at 520 n. 9, 99 S.Ct. at 2457 n. 9 (emphasis supplied). Here is the wording of the presumption with which the Supreme Court was concerned in *Leary*:

> "Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such *possession shall be deemed sufficient evidence to authorize conviction* unless the defendant explains his possession to the satisfaction of the jury." 395 U.S. at 30, 89 S.Ct. at 1545 (emphasis supplied).

The *Turner* presumption was embodied in this language:

> "It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and *the absence of appropriate taxpaid stamps* from narcotic drugs *shall be prima facie evidence of a violation* of this subsection by the person in whose possession the same may be found." 396 U.S. at 402 n. 2, 90 S.Ct. at 645 n. 2 (emphasis supplied).

The *Tot* presumption was included in a statute that read as follows:

> "It shall be unlawful for any person who has been convicted of a crime of violence or is a fugitive from justice to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce, and the *possession* of a firearm or ammunition by any such person *shall be presumptive evidence that such firearm or ammunition was shipped* or transported or received, as the case may be, by such person *in violation of this Act.*" 319 U.S. at 464, 63 S.Ct. at 1243 (emphasis supplied).

If the presumptions that formed a part of the jury instructions in *Leary, Turner* and *Tot* were not "of the conclusive or persuasion-shifting variety," neither, in our view, was the presumption that formed a part of the Commonwealth's evidence in the case at bar. The former presumptions were obviously designed to be considered as evidence, just as the presumption at issue here was. Like the presumption in the present case, they used the mandatory word "shall," rather than the permissive word "may." They could not all pass the "rational connection" test, but we have it on the highest authority that each of them passed the "persuasion-shifting" test.

The Supreme Court has said that "[t]he value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case ... depending on the strength of the connection between the particular basic and elemental facts involved and on the degree to which the device curtails the factfinder's freedom to assess the evidence independently." *County Court of Ulster County*, 442 U.S. at 156, 99 S.Ct. at 2223. In the instant case, as we have seen, the connection between the basic fact of the defendant's blood alcohol concentration and the "under the influence" element of the crime charged is very strong—substantially stronger, in our view, than the connection between the facts shown and the "malice aforethought" or "requisite intent to kill" elements involved in murder cases such as

those under review in *Mullaney v. Wilbur* and *Francis v. Franklin.*

There is obvious value, moreover, in a reliable evidentiary device that can avoid the necessity of putting a doctor of medicine on the stand every time a misdemeanor DUI case comes to trial. The convenience factor is not controlling, but it can be taken into consideration as a corollary of the rational connection test. *Tot*, 319 U.S. at 467, 63 S.Ct. at 1244. For the reasons already stated, finally, we are satisfied that the use of the presumption as evidence against Mr. Morgan did not impermissibly curtail the factfinder's freedom to assess the evidence independently.

Like most, if not all, of the judicial officers who have had occasion to review Mr. Morgan's conviction—a rather impressive number of judges for a misdemeanor case—we have no problem with the way in which the jury assessed the evidence. Courts across the nation have long grappled, as the Barren Circuit Court observed, "with the fine line distinction between permissible and impermissible inferences and presumptions, often reaching amazing breadths in grasping for support and logic upon which to base their opinions." *Morgan v. Commonwealth*, Appeal No. 87-X014, slip op. at 4 (Oct. 1, 1987). Perhaps our logic is no better than that of courts that have decided similar cases the other way. See *People v. Hickox*, 751 P.2d 645 (Colo.App.1987); *Simon v. State*, 182 Ga. App. 210, 355 S.E.2d 120 (1987). When is all is said and done, however, it seems perfectly obvious that Mr. Morgan had imbibed much too freely before he ran his brother-in-law's pickup off the road and through the fence. He was fortunate that he did not injure or kill himself or someone else. He received a trial that was fundamentally fair, and a jury of his peers unanimously concluded that he was guilty beyond a reasonable doubt. The Kentucky trial court imposed a penalty that was by no means disproportionate to the seriousness of the offense, and that penalty has long since been paid. We cannot give Mr. Morgan back the seven days he served in jail, and we do not believe that we are required to remit his fine and set aside his conviction.

The judgment of the district court is AFFIRMED.

## APPENDIX
### KRS 189.520(3) and (4)

(3) In any criminal prosecution for a violation of KRS 189A.010 or subsection (1) of this section, wherein the defendant is charged with having operated a vehicle while under the influence of intoxicating beverages, the amount of alcohol in the defendant's blood as determined at the time of making an analysis of his blood, urine, breath or other bodily substance, shall give rise to the following presumptions:

(a) If there was 0.05 percent (5/100%) or less by weight of alcohol in such blood, it shall be presumed that the defendant was not under the influence of intoxicating beverages;

(b) If there was more than 0.05 percent (5/100%), but less than 0.10 percent by weight of alcohol in such blood, such fact shall not constitute a presumption that the defendant either was or was not under the influence of intoxicating beverages, but such fact may be considered, together with other competent evidence, in determining the guilt or innocence of the defendant;

(c) If there was 0.10 percent (1/10%) or more by weight of alcohol in such blood, it shall be presumed that the defendant was under the influence of intoxicating beverages.

(4) The provisions of subsection (3) of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether the defendant was under the influence of intoxicating beverages.