**Paul PISANO, Appellant (Defendant),**

v.

**STATE of Wyoming, Appellee (Plaintiff).**

**No. 91–220.**

Supreme Court of Wyoming.

April 6, 1992.

Leonard D. Munker, State Public Defender, David Gosar, Appellate Counsel, and Erin A. McIntyre, Asst. Public Defender, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., and Mary Beth Wolff, Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

MACY, Justice.

Appellant Paul Pisano appeals from his conviction for delivery of cocaine.

We affirm.

Appellant's sole issue on appeal is: "Whether there was sufficient evidence to convict the Appellant of delivery of cocaine."

The case against Appellant arose from a series of three undercover narcotics operations conducted by the Cheyenne Police Department's Special Enforcement Unit (the Unit). The first operation took place on March 12, 1990, after a confidential informant advised the Unit's Detective Farmer that an "eight ball" (three and one-half grams) of cocaine could be purchased through Patrick Pacheco. As part of the operation, the informant contacted Pacheco about purchasing an eight ball and was informed that Daniel Abeyta could supply the cocaine. Subsequently, Detective Farmer, posing as a buyer, went with the informant to Abeyta's residence, the informant provided Abeyta with the "buy money," and the pair was told to return for the cocaine after Abeyta turned on his porch light.

Detective Farmer, anticipating that Abeyta might leave to purchase the cocaine, arranged for a surveillance team to monitor Abeyta's residence at 815 East 10th Street and for a second team to watch the residence of Abeyta's suspected supplier, Ricky Bustos. As anticipated, Abeyta left to purchase the cocaine but traveled on foot, making surveillance difficult. The surveillance team lost sight of Abeyta in the vicinity of 7th Street or 8th Street and Morrie Avenue, less than a block from Appellant's residence at 922 East 7th Street. The second team, observing Bustos, was able to maintain surveillance and determined that Bustos and Abeyta did not meet.

After the surveillance team lost sight of Abeyta, Detective Farmer had them return to the 800 block of East 10th Street to wait for Abeyta to return. Approximately fifteen minutes after Abeyta originally left his house, the team spotted him running up to his front door. The team notified Detective Farmer of Abeyta's return, whereupon the detective and the informant drove back to Abeyta's house, found that the porch light had been turned on, and obtained the cocaine from Abeyta.

Although Detective Farmer purchased the cocaine on March 12, 1990, he did not arrest Abeyta until July 1990. In an interview following his arrest, Abeyta informed Detective Farmer that on March 12, 1990, he had walked to Appellant's house to purchase the cocaine which he subsequently sold to Detective Farmer. At trial, Abeyta repeated this statement.

On October 29, 1990, the Unit conducted its second operation after another informant, Frank "Rusty" Deck, told Detective Spencer that he worked with a man named Pisano who was involved in drug dealings. Deck agreed to assist the police by acting as an informant and, in a recorded telephone call that same day, arranged to purchase marijuana from Appellant. Detective Spencer provided Deck with a wireless transmitter and $300 in prerecorded buy money which Deck used to purchase one and one-half ounces of marijuana from Appellant.

In the Unit's third operation, Deck again arranged to purchase marijuana from Appellant. On November 15, 1990, Deck, with $1,100 in buy money and a wireless transmitter, contacted Appellant at his house. A surveillance team, monitoring the transaction, waited until the exchange had been

made. Then, without a warrant, they broke into Appellant's house and arrested him. Following his arrest, the Unit's officers interviewed Appellant at the county jail. In his interview, Appellant admitted selling cocaine to Abeyta, but he claimed he had not done so for at least six months.

As a result of the three operations, Appellant was charged with four counts: Count I alleged that Appellant conspired to deliver marijuana; Count II alleged that Appellant delivered marijuana on October 29, 1990; Count III alleged that Appellant delivered marijuana on November 15, 1990; and Count IV alleged that Appellant delivered cocaine on March 12, 1990.

Appellant waived his right to a jury trial, and on June 26, 1991, the district court found Appellant guilty of Count II, delivery of marijuana in violation of Wyo.Stat. §§ 35–7–1031(a)(ii) and 35–7–1014(d)(xiii) (1988) and of Count IV, delivery of cocaine in violation of Wyo.Stat. §§ 35–7–1031(a)(i) and 35–7–1016(b)(iv) (1988). The district court found, "The circumstances surrounding the November 15, 1990 transaction in which [Appellant] sold marijuana to Deck did not constitute exigent circumstances justifying warrantless arrest." Because the district court found the November 15, 1990, arrest was invalid, the court suppressed all evidence resulting from that arrest, including Appellant's statement that he previously sold cocaine to Abeyta.

Appellant appeals only from his conviction for the March 12, 1990, delivery of cocaine, claiming sufficient evidence did not exist to support a conviction. Our frequently stated standard of review for a sufficiency-of-the-evidence question " 'is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury

when the evidence is viewed in the light most favorable to the State.' " *Broom v. State*, 695 P.2d 640, 642 (Wyo.1985) (quoting *Harvey v. State*, 596 P.2d 1386, 1387 (Wyo.1979)).

Pursuant to Wyo.Stat. § 35–7–1031 (1988),[1] the State had the burden of proving that Appellant delivered a controlled substance, cocaine, to Abeyta.[2] To meet its burden of proof, the State relied in large part upon Abeyta's testimony. Abeyta testified as follows:

Q. Do you remember a person that you know as [the informant], Pat Pacheco and Detective Farmer coming to your house on [March 12, 1990]?

A. Yes.

Q. You didn't know that Detective Farmer was a police officer at that time, did you?

A. No, ma'am.

Q. Did they come—for what reason did they come to your house?

A. They wanted to buy some cocaine.

Q. Who contacted you about that?

A. Pat Pacheco did.

Q. And when they came to your house, did [the informant] give you some money?

A. Yes.

Q. Do you remember how much it was?

A. $280.

Q. Did you ask them to leave?

A. Yes.

Q. And why did you ask them to leave?

A. So I can get the cocaine.

Q. Did you have it at your house at that time?

A. No, ma'am.

Q. Did you tell them to come back later?

A. Yes.

---

1. Section 35–7–1031 provides in pertinent part:
   (a) Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:
   (i) A controlled substance classified in Schedule I or II which is a narcotic drug, is

guilty of a crime and upon conviction may be imprisoned for not more than twenty (20) years, or fined not more than twenty-five thousand dollars ($25,000.00), or both[.]

2. Appellant does not dispute the fact that the substance in question was cocaine.

Q. Do you have a signal for them when they were supposed to come back?

A. I told them when I was back home, that my light would be on outside.

Q. And did they leave?

A. Yes, ma'am.

Q. And then what did you do?

A. I left my house.

Q. Were you on foot or were you in a car?

A. I walked.

. . . .

Q. Whose house did you go to to pick this up?

A. Paul's.

Q. Paul?

A. Pisano.

Abeyta's testimony was corroborated by the surveillance teams' testimony that Abeyta only left his house for approximately fifteen minutes (meaning he must have purchased the cocaine from a source relatively nearby); that they lost visual contact with him less than a block from Appellant's residence; and that Bustos, originally suspected of being Appellant's supplier, did not meet with Abeyta.

When viewed in isolation, the surveillance teams' observations are insufficient to convict Appellant of delivering cocaine to Abeyta. However, when we consider the surveillance teams' testimony in conjunction with Abeyta's testimony and view the testimony in the light most favorable to the State, the testimony constitutes sufficient evidence to form the basis for a reasonable inference that Appellant was guilty

beyond a reasonable doubt of delivering cocaine.

Appellant argues that no one witnessed Abeyta entering or leaving Appellant's residence, nor did anyone witness Abeyta meeting with Appellant. Appellant also contends that Abeyta's testimony was not credible because Abeyta may have had a motive for falsely accusing Appellant. Appellant supports this last argument by listing several potential reasons why Abeyta may have falsely accused him.[3]

The difficulty with Appellant's arguments is that they fail to recognize this Court's function in determining whether sufficient evidence exists to support a verdict. Our role is to determine whether the record evidence is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt, *not* to reweigh the evidence or reexamine the credibility of a witness. *Broom*, 695 P.2d at 642–43; *Rathbun v. State*, 802 P.2d 881, 882 (Wyo. 1990). By arguing that no one witnessed Abeyta entering or leaving Appellant's residence and that Abeyta may have had a motive to testify falsely, Appellant is asking us to reweigh the evidence and to reexamine the credibility of a witness. This is not our task.

Affirmed.

---

3. 1) Abeyta was an admitted and convicted drug dealer;

2) According to the police, Abeyta was known to have sold cocaine to minors at least once;

3) Although Abeyta testified that he did not "cut a deal" with the District Attorney, he pled guilty to the same March 12, 1990 Delivery of cocaine charge and received no jail time;

4) Abeyta's accusation of [Appellant] occurred four months after the charged transaction;

5) Abeyta would not want to implicate his *real supplier* because that would be cutting off his nose to spite his face; and,

6) Abeyta might bear a grudge against [Appellant] for any number of reasons.

(Emphasis in original).