Mike HUFF, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 99–1.

Supreme Court of Wyoming.

Dec. 13, 1999.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; and Donna .D. Domonkos, Appellate Counsel.

Representing Appeellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Georgia L. Tibbetts, Senior Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

MACY, Justice.

Appellant Mike Huff appeals from his convictions for one count of defrauding an innkeeper and three counts of check fraud.

We affirm.

## ISSUES

Huff presents several issues on appeal:

ISSUE I.

Whether the district court committed reversible error when it instructed the jury with a mandatory presumption?

ISSUE II.

Was there insufficient evidence to convict Huff of defrauding an innkeeper or check fraud when the innkeeper knew there were insufficient funds in Huff's checking account and when the innkeeper accepted a television as collateral?

ISSUE III.

Did the trial court improperly instruct the jury regarding the date of the offense over defense counsel's objection relieving the state of its burden to prove every element of the offense beyond a reasonable doubt?

ISSUE IV.

Whether it was error for the charging document to include tax on the value of the accommodations?

ISSUE V.

Whether plain error occurred when the prosecutor asked a complaining witness if Huff was lying?

## FACTS

Huff rented a room at the Buffalo Motel for three weeks during September of 1997. The owner of the motel charged Huff $200 for the first week, and Huff wrote a check to the motel to pay for his accommodations. The check was returned to the motel because there were insufficient funds in Huff's checking account to pay it. The motel owner informed Huff that the check had been returned, and Huff gave her another check for $200. The motel owner called Huff's bank to verify that the second check would clear, and the bank informed her that his account did not contain sufficient funds to pay the check. Consequently, the motel owner did not deposit the check. She moved Huff to a different room and charged him $150 dollars for each of the remaining two weeks. Huff subsequently wrote a check to the Buffalo Motel for $500 to cover his entire stay at the motel. He post-dated the check for October 3, 1997.

Huff also issued checks to The Eyewear Gallery and the Donut Shop in Buffalo, and those checks were returned because there were insufficient funds in his account to pay them. On October 2, 1997, Huff was served with a notice of dishonor in which the county attorney demanded that he pay the first $200 Buffalo Motel check within five days. Huff did not make the payment, and, on October 3, 1997, he stopped payment on the $500 check that he had given to the Buffalo Motel. Huff was served with notices of dishonor concerning the $500 check to the Buffalo Motel and the checks to The Eyewear Gallery and the Donut Shop. He did not, however, pay the checks.

Huff was charged with three counts of misdemeanor check fraud and with one count of felony defrauding an innkeeper. A jury found him guilty of all four counts. He appealed to the Wyoming Supreme Court.

## DISCUSSION

### A. Jury Instructions

Huff asserts that the trial court erroneously instructed the jury in Instruction No. 6 and Instruction No. 8A. The state argues that the instructions were correct. We agree with the state.

The trial court has wide latitude in instructing the jury. *Hernandez v. State,* 976 P.2d 672, 674 (Wyo.1999). Reversible error will not be found "as long as the instructions correctly state the law and the entire charge to the jury adequately covers the issues." *Baier v. State,* 891 P.2d 754, 756 (Wyo.1995). The trial court's instructions to the jury should inform it about the applicable law so that it may apply the law to its findings of material facts. *Brett v. State,* 961 P.2d 385, 389 (Wyo.1998).

#### 1. INSTRUCTION No. 6

Huff was convicted of three counts of check fraud under Wyo. Stat. Ann. § 6-3-702 (LEXIS 1999). That statute provides in relevant part: "(a) Any person who knowingly issues a check which is not paid because the

drawer has insufficient funds or credit with the drawee has issued a fraudulent check and commits fraud by check." Section 6–3–702(a). "Knowingly issues" is defined as "issuing a check to obtain property or to pay a debt with intent to defraud or deceive any other person." Wyo. Stat. Ann. § 6–3–701(a)(ii) (LEXIS 1999).

The trial court gave Instruction No. 6 to the jury as part of its charge concerning the check fraud crimes. That instruction quoted Wyo. Stat. Ann. § 6–3–703(a) (LEXIS 1999) in part as follows:

"(a) Any of the following is ... evidence that the person at the time he issued the check or other order for the payment of money intended that it should not be paid:

"(ii) Proof that at the time of issuance he did not have sufficient funds with the drawee and that he failed to pay the check or other order within five (5) days after receiving notice of nonpayment or dishonor, personally given or sent to the address shown on the check or other order; or

"(iii) Proof that when presentment was made in a reasonable time the issuer did not have sufficient funds with the drawee and he failed to pay the check or other order within five (5) days after receiving notice of nonpayment or dishonor, personally given or sent to the address shown on the check or other order."

Instruction No. 6 (quoting § 6–3–703(a)). The words which the trial court redacted were "prima facie." The trial court remarked that it did not include the "prima facie" language in the instruction because it was a legal term of art and would be difficult to define. Huff argues that Instruction No. 6 contained an unconstitutional mandatory presumption which required the jury to find that the intent element of the crimes was satisfied once the predicate facts that Huff did not have sufficient funds in his account and that he failed to pay the checks within five days after receiving notices of dishonor were proven.

Inferences and presumptions are commonly used in our adversary system of fact finding. *County Court of Ulster County,*

*New York v. Allen,* 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979). Generally, there are two types of inferences or presumptions: permissive and mandatory. 442 U.S. at 157, 99 S.Ct. 2213; *Harley v. State,* 737 P.2d 750, 754 (Wyo.1987). A permissive inference allows, but does not require, the fact finder "to infer the elemental fact from proof by the prosecutor of the basic one and ... places no burden of any kind on the defendant." 442 U.S. at 157, 99 S.Ct. 2213; *see also Harley,* 737 P.2d at 754. A mandatory presumption, on the other hand, informs the trier of fact that it "must find the elemental fact upon proof of the basic fact." *Id.*

It is appropriate to include a permissive inference in an instruction so long as "the inference to be drawn from the predicate facts is a rational one." *Harley,* 737 P.2d at 755; *see also County Court of Ulster County, New York,* 442 U.S. at 157, 99 S.Ct. 2213. The United States Supreme Court and this Court have determined, however, that it is unconstitutional to incorporate mandatory presumptions into instructions in criminal cases. *See, e.g., Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Harley,* 737 P.2d 750. A criminal defendant's right to due process of law is violated when the jury is instructed with a mandatory presumption because a mandatory presumption has " 'the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime.' " *Harley,* 737 P.2d at 754 (quoting *Francis v. Franklin,* 471 U.S. 307, 312, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985)).

In analyzing the propriety of Instruction No. 6, we must first determine whether the instruction incorporated a mandatory presumption or a permissive inference. *Id.* In determining the nature of the presumption, we consider how the instruction would be understood by a reasonable juror. *Id.* The verb used in the instruction is important in determining the nature of the presumption. 737 P.2d at 755. For example, the verb "may" connotes a permissive inference while the verb "shall" suggests a mandatory presumption. *Id.*

In *Morgan v. Shirley*, 958 F.2d 662, 668–70 (6th Cir.1992), the United States Court of Appeals reviewed the appellant's conviction for driving while under the influence of alcohol. The trial court in that case instructed the jury that the statutory presumptions concerning blood alcohol levels were evidence to be considered in the case. 958 F.2d at 664–65. In determining whether the instruction was constitutional, the court of appeals noted that the instruction was couched in mandatory language. 958 F.2d at 668. The court of appeals emphasized, however, that the jury was simply directed to treat the presumptions as evidence in the case; the jury was not told that the evidence established an element of the crime. *Id.* The court of appeals ruled, therefore, that, because the jury was aware that it was the sole judge of the weight of the evidence, the instruction contained a permissive inference rather than a mandatory presumption. *Id.; see also United States v. Myers*, 972 F.2d 1566, 1573–74 (11th Cir.1992), *cert. denied*, 507 U.S. 1017, 113 S.Ct. 1813, 123 L.Ed.2d 445 (1993).

Returning to the facts of the case at bar, we note that Instruction No. 6 directed the jury to consider proof that Huff did not have sufficient funds in his account and that he failed to pay the checks after notices of dishonor as evidence of his criminal intent. Although Instruction No. 6 was framed in mandatory language, the trial court did not direct the jury that it must consider the intent element of the crimes as having been established once the predicate facts were proven. Instead, like in *Morgan*, 958 F.2d 662, the trial court simply instructed the jury to consider the predicate facts as evidence of Huff's intent.

The trial court did not tell the jury what weight to give the evidence. The jurors were instructed that they were "the exclusive judges of the facts and of the effect and value of the evidence." Instruction No. 1. The trial court also told the jury that the state had the responsibility of proving all the elements of check fraud beyond a reasonable doubt and that it should consider all the evidence presented in the case to determine whether or not Huff was guilty of committing the crimes.

Considering Instruction No. 6 in light of the entire jury charge, we conclude that a reasonable juror would not have believed that he was required to find that the intent element of check fraud was established simply because the state proved the predicate facts set out in § 6–3–703(a). A reasonable juror would have regarded proof of insufficient funds and failure to pay the checks as merely factors that should be taken into account in determining whether or not Huff had the criminal intent to defraud. *See Morgan*, 958 F.2d at 668–70. We conclude, therefore, that Instruction No. 6 included a permissive inference rather than a mandatory presumption.

We turn now to the question of whether the inference was rational. *Harley*, 737 P.2d at 755. Common sense dictates that it is reasonable to infer that proof of insufficient funds and failure to honor checks are evidence that the drawer did not intend to pay the checks. Such an inference is logical and permissible in light of the facts of this case. The instruction did not violate Huff's right to due process of law, and it did not unduly emphasize those aspects of the trial evidence.

 Huff additionally maintains that the trial court violated W.R.E. 303 when it failed to advise the jury that the presumption was rebuttable and that its existence must be proven beyond a reasonable doubt. W.R.E. 303 provides in pertinent part:

(a) Scope. Except as otherwise provided by statute, in criminal cases, presumptions against an accused, recognized at common law or created by statute, including statutory provisions that certain facts are prima facie evidence of other facts or of guilt, are governed by this rule.

. . . .

(c) Instructing the Jury. Whenever the existence of a presumed fact against the accused is submitted to the jury, the court shall instruct the jury that it may regard the basic facts as sufficient evidence of the presumed fact but is not required to do so. In addition, if the presumed fact establishes guilt or is an element of the offense or negatives a defense, the court shall instruct the jury that its existence, on all the

evidence, must be proved beyond a reasonable doubt.

W.R.E. 303(c) requires the trial court to inform the jury that a presumption is permissive. *Krucheck v. State*, 671 P.2d 1222, 1223 (Wyo.1983). When the existence of an element of a crime may be presumed, the trial court is also required to instruct the jury that the element must be proven beyond a reasonable doubt. W.R.E. 303(c); *Krucheck*, 671 P.2d at 1223. We conclude that the trial court did not violate W.R.E. 303 when it instructed the jury in this case.[1] The permissive language of Instruction No. 6, together with the instructions which informed the jury of the state's burden of proof, satisfied the requirements of W.R.E. 303. *See Eckert v. State*, 680 P.2d 478, 483–84 (Wyo. 1984).

## 2. INSTRUCTION NO. 8A

Huff was convicted of defrauding an innkeeper under Wyo. Stat. Ann. § 6–3–406(a)(i) (LEXIS 1999). That statutory provision states:

(a) A person who, with intent to defraud, procures food, drink or accommodations at a public establishment without paying in accordance with his agreement with the public establishment is guilty of:

(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the food, drink or accommodations is five hundred dollars ($500.00) or more ...

The trial court instructed the jury on the elements of the crime of defrauding an innkeeper in Instruction No. 8A. That instruction stated:

The elements of the crime of Defrauding an Innkeeper, as charged in this case, are:

1. On or about the 3rd day of October, 1997

2. In Johnson County, Wyoming

3. The Defendant, Mike Huff

4. With intent to defraud

5. Procured accommodations at a public establishment

6. Without paying in accordance with his agreement with the public establishment; and

7. The value of the accommodations was $500.00 or more.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

▇▇▇ Huff maintains that the date in the instruction should have been September 1, 1997—the date on which he procured the accommodations from the Buffalo Motel— rather than October 3, 1997—the date on which he stopped payment on the $500 check he gave to pay for the accommodations. He asserts that, by using the October 3, 1997, date, the trial court effectively released the state from its obligation to prove that he procured the accommodations with the intent to defraud. He concludes that the effect of the instruction was to allow him to be imprisoned for his indebtedness in violation of Article 1, Section 5 of the Wyoming Constitution.

Section 6–3–406(a)(i) requires that, to be found guilty of defrauding an innkeeper, a person must procure accommodations with the intent to defraud and fail to pay for those accommodations. In the usual case involving a short hotel stay, the procurement of the accommodations and the failure to pay for them will occur within close proximity of time to one another. In this case, however, a month passed between Huff's procurement of the accommodations at the Buffalo Motel and his order to stop payment on the check. The crime, obviously, was not complete until Huff failed to pay for his room by stopping payment on his check.

---

1. If the trial court had included the "prima facie" language from § 6–3–703(a) in the instruction, it would have been required to define the term and to explain that the presumption was rebuttable. W.R.E. 303; *Cox v. State*, 964 P.2d 1235, 1237 (Wyo.1998); *O'Neal v. State*, 498 P.2d 1232, 1235–36 (Wyo.1972).

Instruction No. 8A identified the date of the offense as "on or about" October 3, 1997. This Court has consistently ruled that the exact date of the offense is not required so long as the action or occurrence relied upon for conviction is sufficiently identified. *See, e.g., Jackson v. State,* 891 P.2d 70, 74–75 (Wyo.1995); *Pike v. State,* 495 P.2d 1188, 1190 (Wyo.1972). The jury was correctly instructed on the elements of the crime and was, therefore, aware that, to convict Huff, it was required to find that he harbored the requisite criminal intent when he procured the accommodations. Taking into account the elements of the crime of defrauding an innkeeper and the unusual facts of this case, we conclude that it was appropriate to instruct the jury that the offense was alleged to have occurred "on or about" October 3, 1997. The trial court did not err by giving Instruction No. 8A to the jury.

**B. Sufficiency of the Evidence**

■ Huff contends that insufficient evidence was presented at the trial to convict him of defrauding an innkeeper (Count I) or of check fraud for the $200 check that he gave to the Buffalo Motel (Count II) because the state did not prove that he intended to defraud the Buffalo Motel. The state counters that the evidence of Huff's criminal intent was sufficient to support his conviction on those charges. We agree.

We apply the following standard of review in determining whether sufficient evidence was presented at the trial to support the jury's verdict:

> This Court assesses whether all the evidence which was presented is adequate enough to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State. We leave out of consideration entirely the evidence presented by the unsuccessful party which conflicts with the successful party's evidence, and we afford every favorable inference to the successful party's evidence which may be reasonably and fairly drawn from that evidence. We have consistently held that, even though it is possible to draw other inferences from the evidence which has been presented, the jury has the responsibility to resolve conflicts in the evidence. We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.

*Bloomquist v. State,* 914 P.2d 812, 823–24 (Wyo.1996) (citations omitted); *see also Sutherland v. State,* 944 P.2d 1157, 1160–61 (Wyo.1997).

The evidence, when viewed in the light most favorable to the state, supports the jury's verdict. Huff rented a room at the Buffalo Motel and paid for the first week of his stay with a $200 check. He told the motel owner that he had a great deal of money because he had recently sold a house in Lander for $85,000 and that he was looking for a $150,000 or $200,000 house in Buffalo. When the $200 check was returned, the motel owner confronted Huff, and he gave her another $200 check, which, like the first check, would not clear. Despite the evidence to the contrary, Huff repeatedly assured the motel owner that he had enough money to pay for his accommodations. He stayed at the motel for three weeks, and his total bill, including sales tax, was $502.90. Huff gave the motel owner a check for $500 to cover his entire stay at the motel. He post-dated the check for October 3, 1997. Huff stopped payment on the check on October 3, 1997, and withdrew $400 from his account, leaving a balance of approximately $100. The county attorney had Huff served with notices of dishonor which directed him to pay the checks within five days. Huff did not pay the checks or give the Buffalo Motel money in payment for his accommodations.

The evidence presented at trial showed that Huff's issuance of the insufficient funds checks was not a mistake. He had a long history of issuing checks when there were insufficient funds in his account to pay them. In fact, an officer from Huff's bank testified that, in just one year, Huff issued 245 insufficient funds checks.

Huff claims that the evidence which showed that he gave the motel owner a post-dated check and that he gave her a television as collateral to partially secure his debt proved that he did not have the intent to defraud and that he and the motel owner entered into a credit transaction. He directs us to *O'Neal v. State,* 498 P.2d 1232 (Wyo. 1972), as support for his claim that the evidence that he gave the motel owner the post-dated check negated any intent to defraud. In *O'Neal,* the appellant gave a check to a business owner and told him that her account "'may be a little short'" but that she was selling calves and there would be money in her account shortly. 498 P.2d at 1233. This Court reversed O'Neal's conviction for check fraud because the payee had notice that there were insufficient funds in her account to pay the check. 498 P.2d at 1234. The rationale relied upon in *O'Neal* is not applicable to the case at bar because Huff was not charged with check fraud concerning the post-dated check.

The evidence showed that, although Huff gave the motel owner the post-dated check, he led her to believe that he had a great deal of money and that he would pay for his accommodations. Huff's actions in assuring the motel owner that he would pay for his room while giving her three nonnegotiable checks suggested that he intended to defraud her, regardless of the fact that he post-dated the last check. The motel owner testified that she took the television as security because she did not trust Huff. She stated, however, that she did not want the television and did not accept it as partial payment for Huff's accommodations. Huff's theory of defense—that he and the motel owner had entered into a credit agreement—was further undermined by the fact that he did not make any payments on his motel bill. The jury obviously did not accept his defense because it convicted him of the crimes. The evidence presented at the trial was sufficient to allow the jury to reasonably conclude that Huff and the motel owner did not enter into a credit transaction and that Huff harbored the requisite intent to defraud to be convicted of Counts I and II.

### C. Propriety of the Felony Charge

 According to § 6–3–406(a)(i), defrauding an innkeeper is a felony if the value of the accommodations is $500 or more. Huff contends that he was improperly charged with a felony because the value of the accommodations was only $470. He claims that the state improperly included the sales tax charge of $32.90 to raise the value of the accommodations above $500. Huff's claim on appeal is a challenge to the validity of the criminal information. He did not, however, present his argument to the trial court. As a consequence, he waived his right to contest the validity of the charge. W.R.Cr.P. 12(b)(1) & (2), (g); *see also Yetter v. State,* 987 P.2d 666, 670 (Wyo.1999).

Huff also asserts that the state violated his constitutional right to equal protection of the law when it included the sales tax in determining the value of the accommodations because Wyoming counties charge different percentages of sales tax. He did not, however, support his bold assertion with cogent argument or with citation to pertinent authority. We will not, therefore, address his constitutional argument. *Osborn v. Estate of Manning,* 968 P.2d 932, 933 (Wyo.1998).

### D. Comment on Huff's Veracity

 Huff argues that the trial court committed plain error when it allowed the prosecutor to question the motel owner about his veracity. The question Huff complains about occurred during the prosecutor's redirect examination of the motel owner:

Q [Motel owner], just a couple of things. If Mr. Huff were to testify that there were problems with the room, would that be a lie?

A Probably, yes. About room in motel?

Q Yeah.

A That's everything working. And it's impossible—whatever happening not problem. He come to office; he explain what happened; my husband, he do everything. It be fixed in five or ten minutes.

Huff did not object to the question. Consequently, to secure a reversal of his convic-

tion, he must demonstrate that the trial court committed plain error.

A three-part test has been established for determining whether an error may achieve the status of plain error. First, the record must be clear as to the incident which is alleged as error. Second, the party claiming that the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove that a substantial right has been denied him and as a result he has been materially prejudiced.

*Bradley v. State*, 635 P.2d 1161, 1164 (Wyo. 1981); *see also Hodgins v. State*, 962 P.2d 153, 156 (Wyo.1998); *Johnson v. State*, 936 P.2d 458, 465 (Wyo.1997).

■ This Court has consistently recognized that it is the jury's duty to resolve the factual issues, judge the credibility of the witnesses, and determine the guilt or innocence of a criminal defendant. *Gayler v. State*, 957 P.2d 855, 860 (Wyo.1998); *Zabel v. State*, 765 P.2d 357, 362 (Wyo.1988). A witness may not, therefore, comment on the veracity or truthfulness of another witness. *Gayler*, 957 P.2d at 860; *Curl v. State*, 898 P.2d 369, 373–74 (Wyo.1995). Prior cases have demonstrated, however, that we must look carefully at the question asked and the testimony elicited to determine whether a witness actually made an improper comment about another witness' credibility. *See, e.g., Newport v. State*, 983 P.2d 1213, 1215–17 (Wyo.1999); *Brown v. State*, 953 P.2d 1170, 1182 (Wyo.1998); *Curl*, 898 P.2d at 373–74.

The prosecutor asked the challenged question during his redirect examination of the motel owner. He asked the question to counter defense counsel's suggestion during his cross-examination of the motel owner that Huff's room was in poor condition. The prosecutor was obviously seeking the motel owner's testimony about the condition of the room; he was not asking about Huff's truthfulness or veracity. Without doubt, the question was not skillfully phrased. It would have been more correct and effective if the prosecutor had simply asked her about the room's condition. Nevertheless, even though the prosecutor's question was not carefully worded, the question did not elicit improper opinion testimony. Additionally, Huff has not demonstrated that he was materially prejudiced by the prosecutor's question. The question was a very small and isolated part of the trial testimony, and the evidence against Huff was quite strong. The trial court did not commit error, much less plain error, by allowing the testimony into evidence.

Affirmed.