2004 WY 122

**Joseph Michael LUJAN, Sr., Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 03-197.

Supreme Court of Wyoming.

Oct. 28, 2004.

Representing Appellant: Bert T. Ahlstrom, Jr., Ahlsrom Law Offices, Cheyenne, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Daniel M. Fetsco, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN, and VOIGT, JJ., and GUTHRIE, D.J.

GUTHRIE, District Judge.

[¶ 1] Joseph Michael Lujan, Sr. (Lujan) was convicted by a jury of first degree sexual assault. Wyo. Stat. Ann. § 6–2–302(a)(i). Lujan was then sentenced to not less than seven and not more than ten years in the Wyoming State Penitentiary. We hold that sufficient evidence existed to convict Lujan and therefore affirm.

## ISSUES

[¶ 2] Lujan presents the following issue: Whether there was sufficient evidence presented in this case for the jury to find that [Lujan] was guilty beyond a reasonable doubt of the charge of sexual assault in the first degree contrary to Wyo. Stat. Ann. § 6–2–302(a)(i).

The State re-phrases the issue as follows:

Was [Lujan's] conviction for first degree sexual assault supported by sufficient evidence?

## FACTS

[¶ 3] April Montoya (Montoya) went to Job Services on December 31, 2001, seeking employment. She noticed that Lujan was hiring waitresses at Christy's La Ponderosa, a restaurant/bar in Rawlins. Montoya had worked for Lujan previously and after contacting him, was offered and accepted employment as a waitress beginning that New Year's Eve night.

[¶ 4] Lujan provided two alcoholic drinks to Montoya during the course of her shift. Lujan made sexual advances toward Montoya that evening, including taking her hand and placing it on his crotch and kissing her on the cheek. Eventually she was invited by Lujan into a vacant barroom to discuss what her work schedule would be after the New Year's dance. Upon entering the barroom she discovered the lights were out.

[¶ 5] Montoya twice asked Lujan to turn the lights on in the barroom but Lujan refused. Montoya started to walk out of the barroom but Lujan grabbed her by the arm, pulled her to a bench, and pushed her down onto the bench. Lujan then pulled Montoya's pantyhose off her legs and pulled her underwear down. Lujan held Montoya's hands over her head with one hand and inserted his penis into her vagina. Montoya repeatedly told Lujan to stop during the assault.

[¶ 6] Montoya was eventually able to free herself by kneeing Lujan. In the moments following the assault both parties dressed, and Lujan attempted to hand Montoya fifty dollars, telling her to "take care" of her kids. Montoya then went to the bathroom and removed a tampon she had been wearing, flushing it down the toilet. Lujan told Montoya to come in tomorrow and "act like none of this ever happened."

[¶ 7] After work finished and upon arriving home, Montoya told her boyfriend that "inappropriate things" had happened at work. Montoya then called the police to report the incident. Initially, Montoya told police that the incident was an "attempted rape." Montoya claimed she felt uncomfortable discussing the sexual assault with police. In an interview later that day with Julie Hahn, a victim's advocate, Montoya was able to relate the explicit details of the assault.

[¶ 8] Following her disclosure, Dr. Duane Abels administered a sexual assault exam at the hospital. Dr. Abels testified that Montoya had two fresh bruises on the inner portion of her arms and a small bruise on her spine. Dr. Abels testified that Montoya was "on her period" at the time of his examination.

[¶ 9] Lujan was contacted by Police Detective Eric Ford regarding the alleged sexual assault but claimed that the encounter was consensual. Lujan was charged with one count of first degree sexual assault.

[¶ 10] A trial was held, and a jury returned a guilty verdict. Lujan moved for a judgment of acquittal. After that briefed motion was denied, Lujan moved for a mistrial or in the alternative a new trial. The district court held a hearing and eventually denied that alternative motion. The present appeal followed.

## STANDARD OF REVIEW

[¶ 11] This Court's standard of review for a sufficiency of the evidence claim is well established. We must determine whether any rational trier of fact could have found present, beyond a reasonable doubt, the essential elements of the crime. *Porth v. State,* 868 P.2d 236, 243 (Wyo.1994). In making that determination, we review the evidence, and any inferences to be drawn therefrom, in the light most favorable to the state. *Id.* It is not this Court's role to reweigh the evidence or reexamine the credibility of the witnesses. *Pisano v. State,* 828 P.2d 666, 669 (Wyo.1992), *Trujillo v. State,* 880 P.2d 575, 578 (Wyo.1994).

[¶ 12] This Court has consistently recognized that it is the jury's duty to resolve the factual issues, judge the credibility of the witnesses, and determine the guilt or innocence of a criminal defendant. *Huff v. State,* 992 P.2d 1071 (Wyo.1999).

[¶ 13] Wyo. Stat. Ann. § 6–2–302(a)(i) (LexisNexis2003) states:

§ 6–2–302. **Sexual assault in the first degree.**

(a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:

(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement[.]

## DISCUSSION

[¶ 14] Lujan claims there was insufficient evidence to sustain his conviction. He attacks the credibility of the victim, Montoya. Lujan states that because he was 69 years old, allegedly infirm, four inches shorter, and 20 pounds lighter than the 27–year–old victim, it would have been impossible to force the victim to have sexual intercourse. He further contends that since the victim had received training from a self-defense standpoint as a correction officer at the Wyoming State Penitentiary, she would have known how to avoid any such advance. He states that based upon the victim's testimony of the parties' positions and the location of various articles of clothing, penile access to her vagina would have been impossible. Simply put, Lujan feels all this creates a sort of cumulative physical impossibility and, therefore, says that his admitted penile penetration had to have been consensual.

[¶ 15] Montoya testified that Lujan pushed her onto the bench, held her hands, pulled her undergarments off, and inserted his penis into her vagina. Montoya testified that she constantly told Lujan to stop. Montoya testified that after the encounter, she went to the bathroom and removed a tampon she had been wearing and flushed it down the toilet.

[¶ 16] Dr. Ables examined Montoya after the assault and testified that Montoya had two fresh bruises on the inner portions of her arms, and a small bruise on her spine. Dr. Ables also testified that Montoya was "on her period" at the time of the assault, which was consistent with Montoya's testimony and contrary to Lujan's. The bruising was consistent with the described assault. Further, a reasonable jury could infer that Montoya likely did not consent to having sex with Lujan because, had she consented, she would have removed her tampon.

## CONCLUSION

[¶ 17] Drawing all inferences in the light most favorable to the State, we find that beyond a reasonable doubt a rational trier of fact could have found present the essential elements of Wyo. Stat. Ann. § 6–2–302(a)(i), and, accordingly, we affirm.